**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**VSA, INCORPORATED, d/b/a Carolinas, Respondent.**

No. 93–1677.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1994.

Decided May 12, 1994.

---

**ARGUED:** Christopher Warren Young, N.L.R.B., Washington, DC, for petitioner. Mark E. McQueen, Berens & Tate, P.C., Omaha, NE, for respondent. **ON BRIEF:** Jerry M. Hunter, Gen. Counsel, Yvonne T. Dixon, Acting Deputy Gen. Counsel, Nicholas E. Karatinos, Acting Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, Charles Donnelly, Supervisory Atty., N.L.R.B., Washington, DC, for petitioner.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.

Enforcement granted by published opinion. Judge ELLIS wrote the majority opinion, in which Judge Murnaghan joined. Judge NIEMEYER wrote a dissenting opinion.

## OPINION

ELLIS, District Judge:

The principal question presented in this appeal is whether a union's promise to waive initiation fees for everyone, if elected, impermissibly taints the union's subsequent election. Because we conclude that it does not, and because we conclude that the Regional Director and National Labor Relations Board ("the Board") did not abuse their discretion with regard to other employer objections to the election, we grant enforcement of the Board's Order requiring VSA to recognize and bargain with the Union.

### I.

VSA, Inc. ("VSA"), a Greensboro, N.C. based company, distributes food products to retail vendors. In October 1991, the Chauffeurs, Teamsters and Helpers Union, Local No. 391 ("Union"), filed a petition with the Board, seeking certification as the representative for all drivers employed in the transportation division of VSA's Greensboro facility.[1] Pursuant to a stipulated election agreement, the Board conducted a secret-ballot election on November 22, 1991, with the Union prevailing by a vote of 11 to 8.

Thereafter VSA, believing that the election was tainted, filed timely objections with the Board's Regional Director. Specifically, VSA alleged that Union representatives had conditioned a waiver of Union initiation fees upon a showing of pre-election support for the Union, thereby improperly inducing employees to vote for the Union. VSA further alleged that Union representatives and supporters had threatened employees, creating

---

1. The challenged unit consists only of the drivers employed in VSA's Greensboro transportation division; it excludes the division's clerical employees, guards, and supervisors.

an atmosphere of fear which inhibited "employees' free choice when voting."[2] In VSA's view, these and other incidents had "contaminated" the election process, making impossible a free and uncoerced election.

The Regional Director conducted an independent, confidential investigation of VSA's allegations and then issued a report concluding that none of VSA's allegations were sufficient to warrant setting the election aside. The report accordingly recommended that VSA's objections be overruled. VSA filed timely objections to this report, arguing that the Regional Director erred when he "totally dismissed the affidavits of three Company witnesses who stated that the Union Business Agent told them there would be no initiation fee if the Union was elected, but there would be initiation fees if there was a second attempt to organize." VSA also took issue with the Regional Director's conclusion that VSA's allegations, even if true, did not warrant invalidating the election. Finally, VSA argued that it had submitted evidence raising material issues of fact sufficient to warrant an evidentiary hearing.

In April 1992, the Board formally adopted the Regional Director's findings and certified the Union as the exclusive bargaining representative of employees in the designated unit at VSA. Following certification, VSA refused to bargain with the Union. As a result, the Union filed an unfair labor practice charge against VSA, which prompted the issuance of a complaint and notice of hearing alleging that VSA had violated Sections 8(a)(5) and 8(a)(1)[3] of the National Labor Relations Act ("NLRA") by refusing to bargain with the Union. VSA filed an answer admitting in part and denying in part the allegations, as well as asserting that the Board's certification of the Union had been improper.

In December 1992, the Board issued a Decision and Order, *inter alia*, concluding that VSA had violated Sections 8(a)(1) and 8(a)(5) of the NLRA through its refusal to bargain with the Union.[4] Accordingly, the Decision and Order required VSA to cease and desist from interfering with, restraining, or coercing employees in the exercise of their statutory rights, and further required VSA to bargain with the Union, to embody any understanding or agreement reached during bargaining in a signed agreement, and to post a remedial notice. In May 1993 the Board's General Counsel filed an application for enforcement of the Board's Order. VSA contested the application on the grounds that the Board's decision (1) ignored "critical evidence," (2) incorrectly resolved material issues and (3) contravened settled precedent. The Board rejected these contentions, and now seeks judicial enforcement of its Order.

II.

The standards for judicial review of Board-certified elections are well-settled. To begin with, the results of a Board-supervised representation election are presumptively valid. *N.L.R.B. v. Columbia Cable T.V. Co.*, 856 F.2d 636, 638 (4th Cir.1988). This is not an insubstantial presumption; it can be overcome only by presentation of "specific evidence not only that the alleged acts of interference occurred but also that such acts sufficiently inhibited the free choice of employees as to affect materially the results of the

---

2. VSA made several other claims before the Regional Director that are not pursued here. *See* n. 21, *infra*.

3. 29 U.S.C. §§ 158(a)(1) and (5) state, in relevant part:

 (a) It shall be an unfair labor practice for an employer—

 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

 . . . . .

 (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

4. The Board's Decision and Order further indicated that all of the issues raised by VSA could have been litigated in earlier representation proceedings, and concluded that VSA had failed to introduce either newly discovered or previously unavailable information that would warrant a reexamination of the Union's certification.

election." *Id.* at 638, quoting *N.L.R.B. v. Hydrotherm, Inc.*, 824 F.2d 332, 334 (4th Cir.1987). And the burden is on VSA, as the objecting party, to show that the challenged activity prejudiced the outcome of the election. *See N.L.R.B. v. Manufacturer's Packaging Company, Inc.*, 645 F.2d 223, 225 (4th Cir.1981); *N.L.R.B. v. Bata Shoe Co.*, 377 F.2d 821, 826 (4th Cir.), *cert. denied*, 389 U.S. 917, 88 S.Ct. 238, 19 L.Ed.2d 265 (1967); *see also N.L.R.B. v. Mattison Machine Works*, 365 U.S. 123, 124, 81 S.Ct. 434, 435, 5 L.Ed.2d 455 (1961). Significantly, if the Board's certification decision is reasonable and based on substantial evidence in the record as a whole, then our inquiry is at an end. *Hydrotherm*, 824 F.2d at 334, quoting *N.L.R.B. v. Klingler Electric Corp.*, 656 F.2d 76, 85 (5th Cir.1981); *see also Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Given this rigorous standard, courts appropriately proceed with "judicial caution" before overturning a representation election. *See, e.g., Columbia Cable T.V.*, 856 F.2d at 639; *N.L.R.B. v. A.J. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 327–28, 91 L.Ed. 322 (1946) (The Board enjoys "a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees"). Accordingly, we review the Board's certification Order under an abuse of discretion standard. *See Hydrotherm*, 824 F.2d at 334; *Manufacturer's Packaging Co.*, 645 F.2d at 226 (The Board's determination regarding the validity of an election "is within the sound discretion of the Board" and "should be reversed only when [the Board] has abused its discretion").

### III.

■ VSA's primary objection to enforcement of the Board's Order is that the Regional Director erroneously concluded that statements made during the election campaign concerning a waiver of Union initiation fees did not warrant vacating the election.

To support its allegations, VSA submitted affidavits from three VSA employees indicating that R.W. Brown, a Union Business Agent, told employees at several pre-election meetings that initiation fees would be waived if the Union won election as the employees' representative at the November 22, 1991 election, but that if the Union did not win the election and another petition for representation was filed a "year and a day" later, everyone would be charged initiation fees.[5]

These facts, VSA argues, are analogous to those in *N.L.R.B. v. Savair Manufacturing Co.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973), where the Supreme Court held that a waiver of initiation fees conditioned upon the signing of union authorization cards prior to a representation election is improper and will result in the setting aside of a union victory. *Savair*, 414 U.S. at 276–81, 94 S.Ct. at 498–501.[6] It follows, according to VSA, that *Savair* compels the conclusion that the election here in issue should be set aside. This argument, while superficially appealing, ultimately fails because *Savair*, closely examined, is factually distinguishable from this case in a way that points persuasively in this case to upholding, rather than setting aside, the election.

In *Savair*, "recognition slips" were circulated among employees prior to the representation election. *Savair*, 414 U.S. at 272, 94 S.Ct. at 496. Any employee who signed a slip prior to the election automatically became a member of the union, and did not have to pay an "initiation fee" or "fine." *Id.* at 272–73, 94 S.Ct. at 496–97. If an employee did not sign a slip and the union subsequently won the election, the employee would have to pay an initiation fee. *Id.* at 273, 94 S.Ct. at 497. While union officials did not conduct the solicitation of "recognition" slips, the officials did explain to employees that initiation fees would be waived only for those employees who signed the slips prior to the election. *Id.* at 274, 94 S.Ct. at 497–98. Finally, at least one employee testified that

---

5. Brown allegedly made these statements after learning that support for the Union was waning.

6. *See Hydrotherm*, 824 F.2d at 336; *Cataract, Inc.*, 274 NLRB 741, 1985 WL 45853 (1985) (Statements linking the availability of a reduced initiation fee and joining the union before the election are an impermissible inducement to employees and warrant setting aside an election).

he signed a "recognition slip" specifically to avoid a "fine" if the union won the election. *Id.* at 275, 94 S.Ct. at 498. On these facts the Supreme Court concluded that "[b]y permitting the union to offer to waive an initiation fee for those employees signing a recognition slip prior to the election, the Board allows the union to buy endorsements and paint a false portrait of employee support during its election campaign." *Savair,* 414 U.S. at 277, 94 S.Ct. at 499. Thus, the linchpin of *Savair* is the linkage between the offer to waive the initiation fee and a pre-election commitment to support the union. *See Savair,* 414 U.S. at 275–78, 94 S.Ct. at 498–99. It is this linkage that constitutes the union's impermissible interference in the election, and allows the union "to buy endorsements and paint a false portrait" of employee sentiment. *Id.* at 277, 94 S.Ct. at 499.

To the same effect is *Deming Div., Crane Co.,* 225 NLRB 657, 1976 WL 7278 (1976), also relied on by VSA. In *Deming,* the union mailed a two page document to all employees in the potential bargaining unit indicating that "[T]here will be no initiation fees for anyone joining now during this campaign.... Sign the card! Do it now! Let's get rolling." *Deming,* 225 NLRB at 659, 1976 WL 7278. *Deming* is *Savair's* factual twin: in both, the initiation fee waiver was open only to those employees who signed union support

cards prior to the election.[7] Thus, in *Deming,* as in *Savair,* the waiver offer was an impermissible interference in the election because, in order to benefit from the waiver, employees had to pledge pre-election union support.[8]

No such impermissible interference by the union occurred here. Unlike *Savair* and *Deming,* the offer to waive initiation fees here was not conditioned on a pre-election commitment to support or vote for the Union. On the contrary, everyone qualified for the waiver if the Union won the election, even those who opposed the Union. Similarly, in the event that the Union initially lost the election, everyone would be subject to initiation fees if the Union won a subsequent election, even those who supported the Union.[9]

█ VSA also misconstrues *Deming* and *Savair* as condemning any initiation fee waiver linked to the outcome of a particular election. Specifically, VSA contends that the waiver offer "applied only to this campaign," and was "directly related to a favorable vote in the election." This is true; the fee waiver in issue was directly related to a Union victory.[10] But this is not what *Savair* and *Deming* forbid: what is forbidden in *Savair* and *Deming* is a linkage between the waiver of initiation fees and, as did not occur here, pre-election commitment by employees to vote

---

7. *See Molded Acoustical Products, Inc., v. N.L.R.B.,* 815 F.2d 934, 938–39 and n. 4 (3rd Cir.), *cert. denied,* 484 U.S. 925, 108 S.Ct. 286, 98 L.Ed.2d 247 (1987) (emphasizing that *Deming,* like *Savair,* was based on a pre-election union announcement that conditioned a waiver of initiation fees on a showing of pre-election union support); *see also Coleman Company, Inc.,* 212 NLRB 927, 927–28, 1974 WL 11397 (1974) (holding that a waiver of initiation fees was objectionable where the union had indicated that "[t]he initiation fee will be waived for all present employees who make application for charter membership in your new local union," as such language could be interpreted by employees to indicate that "it would be to their benefit *to make a union commitment before the election,* and thereby come in at the ground floor") (emphasis added).

8. The Board in *Deming* emphasized that:

It is clear that the Petitioner was attempting to enlist employee endorsement for its organizational efforts urging the signing of union au-

thorization cards for the Petitioner. One of the inducements offered to employees for obtaining their signatures prior to the election was the waiver of initiation fees. To benefit from such a waiver, employees were required to join "now during this campaign."

*Deming,* 225 NLRB at 659, 1976 WL 7278.

9. Unless, of course, the Union made the same offer in a subsequent election, in which case everyone would again qualify for the waiver.

10. By definition, an offer to waive initiation fees is related to a particular outcome or general "vote" in a representation campaign, namely a union victory. *See Molded Acoustical Products,* 815 F.2d at 937–39 (holding that a union's pre-election letter to employees indicating that employees would not have to pay initiation fees if they voted for the union could only be logically interpreted as an offer to waive initiation fees if the union were elected, rather than an offer to waive fees only for those who voted for the union).

for the Union. Similarly, *Savair* and *Deming* also forbid linking a fee waiver for a particular employee to that employee's individual vote. Thus, a waiver offer made to employees voting in favor of a union and not to those voting against the union is impermissibly related to an employee's "yes or no" vote. *See Molded Acoustical Products, Inc.*, 815 F.2d at 938–39.[11] Here, the Board found no evidence that the waiver offer was limited to those employees who voted for the Union. Rather, as the Board concluded, the Union made an across-the-board waiver offer that applied equally to all employees, regardless of how they actually voted or whether they made a pre-election commitment to support the Union. As such, the Union's waiver offer is a permissible campaign tactic that does not run afoul of *Savair* and *Deming*.

■ Indeed, as *Savair* and *Deming* make clear, not every union offer to waive initiation fees is impermissible. Thus *Savair* indicates, in dicta, that union interests may be legitimately served by offering an across-the-board waiver to all employees, regardless of whether employees show pre-election union support. *Savair*, 414 U.S. at 272–74, 94 S.Ct. at 496–98.[12] The Board in *Deming* went further and noted that unions may permissibly offer to waive initiation fees in the course of an election provided:

(1) the waiver is unconnected with support for the union before the election

(2) the waiver is unrelated to a vote in the election

(3) the waiver is made without distinction between joining the union before or after the election.

*Deming Div.*, 225 NLRB at 659, 1976 WL 7278 (citing *Savair*). Various circuits, including this circuit, have adopted this interpretation of *Savair* and have consistently held that a union does not endanger the free exercise of employee choice if it does not condition its initiation fee policy on pre-election union support, but rather offers an across-the-board fee waiver to all employees, regardless of pre-election union support. *See, e.g., N.L.R.B. v. Hydrotherm, Inc.*, 824 F.2d 332, 336 (4th Cir.1987).[13] Thus this circuit and the Supreme Court, as well as various other circuits, have indicated that the crucial distinction in determining whether a proposed waiver of initiation fees is a permissible union tactic is between waiver offers made across the-board to all employees regardless of pre-election union support, and waiver offers made only to those employees who manifest pre-election union support or who voted for the Union. The former offers are permissible, the latter are not.

■ Yet, VSA seemingly argues that the Union's promise to waive initiation fees, even if across-the-board, had an impermissibly coercive effect. This is not so, for while any offer to waive initiation fees is an inducement, this inducement does not amount to impermissible coercion in the absence of a linkage between the offer and either a pre-election pledge of union support or an actual

---

11. Indeed, in *Molded Acoustical Products*, the Third Circuit noted that it would be difficult, if not impossible, for a union to base a waiver of initiation fees on how a particular employee voted "[b]ecause the ballots in an election are kept secret even after the vote is tallied." *Molded Acoustical Products*, 815 F.2d at 938–39. *See, e.g., A.J. Tower Co.*, 329 U.S. 324, 330–32, 67 S.Ct. 324, 327–29, 91 L.Ed. 322 (1946) (emphasizing that an employer's challenges to employee votes for the purpose of ascertaining how a particular employee voted in a representation election are sharply limited).

12. *See N.L.R.B. v. Stone & Thomas*, 502 F.2d 957, 958 (4th Cir.1974) (remanding case to Board to determine whether an ambiguous union offer to reduce initiation fees was impermissibly selective and thus violative of *Savair*).

13. *See also Colquest Energy, Inc., v. N.L.R.B.*, 965 F.2d 116, 122 (6th Cir.1992); *Molded Acoustical Products, Inc.*, 815 F.2d at 937; *Bokum Resources Corp. v. N.L.R.B.*, 655 F.2d 1021, 1024 (10th Cir.1981); *Vicksburg Hospital, Inc., v. N.L.R.B.*, 653 F.2d 1070, 1076 (5th Cir.1981); *N.L.R.B. v. Spring Road Corp.*, 577 F.2d 586, 589 (9th Cir.1978); *N.L.R.B. v. Dunkirk Motor Inn, Inc.*, 524 F.2d 663, 665 (2d Cir.1975) (An across-the-board waiver of initiation fees is a "reasonably calculated response to the traditional management argument that the workers are being asked to support the Union before it has secured any benefits for them."); *N.L.R.B. v. Wabash Transformer Corp.*, 509 F.2d 647, 649–50 (8th Cir.), *cert. denied*, 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975).

vote for the union.[14] The fact is that most permissible union and management tactics are inducements designed to persuade or pressure employees to vote for one side or the other. And there is sometimes a fine line between permissible and impermissible inducements or conduct. For example, it is impermissibly coercive for rank and file employees to make intimidating statements to non-union employees as the non-union employees vote in a union representation election. *See Kitchen Fresh, Inc. v. N.L.R.B.*, 716 F.2d 351, 359 (6th Cir.1983). At the same time, the congregation of union supporters, wearing union insignia, near polls for the purpose of urging voters to "protect their jobs with a vote for the union," does not "interfere with the voter's exercise of free choice to such an extent that the conduct materially affected the results of the election," even though such behavior is arguably intimidating. *Colquest Energy, Inc., v. N.L.R.B.*, 965 F.2d 116, 120 (6th Cir.1992). Further, a union is free to promise employees a benefit established for union members, such as free legal representation, provided receipt of the benefit is not conditioned on the employee's demonstration of pre-election union support. *Colquest Energy*, 965 F.2d at 121.[15] Yet, an employer may be constrained from matching the union's promise.[16] Thus the Board and reviewing courts must discern the line between assuring a fair election, and not unduly restricting the campaign actions of either unions or management.

Of course, the primary goal of the Board in regulating representation campaigns, and of courts on review, is ensuring that the election process is as fair and free from impermissible inducements as possible. Yet, while the Board "aspires to 'laboratory conditions' in elections," it is clear that "clinical asepsis is an unattainable goal in the real world of union organizational efforts." *N.L.R.B. v. Sumter Plywood Corp.*, 535 F.2d 917, 920 (5th Cir.1976), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1105, 51 L.Ed.2d 538 (1977).[17] Indeed, "exaggerations, hyperbole, and appeals to emotions are the stuff of which election campaigns are made." *Schneider Mills, Inc., v. N.L.R.B.*, 390 F.2d 375, 379 (4th Cir.1968) (en banc). And while "[c]oercive conduct is never condoned during the election process ... the Board will not set aside an election unless an atmosphere of fear and coercion rendered free choice impossible." *N.L.R.B. v. Herbert Halperin Distrib. Corp.*, 826 F.2d 287, 290 (4th Cir. 1987). To accept VSA's argument that the Union's across-the-board fee waiver offer was impermissibly coercive would be to condemn any union campaign tactic that involves any element of pressure or inducement. Settled authority is sensibly to the contrary, otherwise no election would survive scrutiny. *See Sumter Plywood*, 535 F.2d at 920 ("Some degree of puffing and propagandizing must be permitted, else the laboratory would be found infected in every case."). Rather, it is the degree of pressure or inducement that is crucial in determining whether a representation campaign is valid, or must be set aside. And in order for such pressure or inducement to warrant setting aside an election, it must lead to the "failure of those in the bargaining unit to make their collective desires effective." *Overnite Transportation Company v. N.L.R.B.*, 327 F.2d 36, 41 (4th Cir.1963). And in the case at bar, VSA has failed to show that the Union's waiver offer led to the inability of those VSA employees in the designated bargaining unit to "make their collective desires effective."

14. Not before us is the question whether an offer to waive an exceptionally high fee, even though available to everyone, across the board, would nonetheless be an impermissible inducement given the amount of the fee.

15. In *Colquest*, the Sixth Circuit noted, in terms apt here, that, "[t]he key to the validity of the union's promises is that the promises be made to all employees without concern for whether or not they demonstrate support for the union during the election process." *Colquest Energy*, 965 F.2d at 121.

16. Indeed, the Act generally prohibits an employer from offering inducements, such as a promise to raise wages or grant other benefits, during the course of a campaign. *See N.L.R.B. v. Exchange Parts Co.*, 375 U.S. 405, 409, 84 S.Ct. 457, 459–60, 11 L.Ed.2d 435 (1964).

17. *See N.L.R.B. v. Herbert Halperin Distrib. Corp.*, 826 F.2d 287, 290 (4th Cir.1987) ("[w]hile the Board strives to maintain 'laboratory conditions' ... in reality these conditions are often 'less-than-perfect' ").

## IV.

 But the analysis does not end with the conclusion that unconditional and across-the-board offers to waive union initiation fees are a permissible union campaign tactic. VSA does not concede that the Union's fee waiver offer here was unconditional; rather, it attacks the Regional Director's and Board's factual conclusion that the offer was in fact across-the-board and unconditional. The substantial evidence rule spikes this attack, for there is ample record evidence to support the Regional Director's and Board's conclusion.

To begin with, as the Regional Director pointed out, a leaflet mailed by the Union to VSA employees prior to the election, entitled "What You Should Know About the Teamsters Union," clearly indicated that "there would be no initiation fees without any distinction between those signing cards before or after the election."[18] The Regional Director further correctly concluded that the Union Agent's remarks "did not state either implicitly or explicitly that anyone would be required to pay initiation fees after the Union won the election." And the Regional Director further found, based on the statements and evidence presented by VSA, that the Union did not impermissibly indicate that the waiver offer would terminate prior to the representation election, *see Cataract, Inc.*, 274 NLRB 741, 1985 WL 45853 (1985); *Coleman Company*, 212 NLRB at 227–28, 1974 WL 11397, but merely indicated that the offer would not apply to any future election.[19] VSA, in short, did not show that the Union's pre-election waiver offer operated to prevent employees from making their collective desires known. *See Columbia Cable TV*, 856

F.2d at 638, quoting *Hydrotherm*, 824 F.2d at 334.

 VSA contends that the leaflet language, as well as the statements made by Union Agent Brown, were ambiguous, such that the language and statements might reasonably have been construed by VSA employees to mean that the waiver offer was conditioned on either a showing of pre-election Union support or an actual vote for the Union. It is true that ambiguous waiver offers are to be interpreted against the offeror. *See N.L.R.B. v. Semco Printing Ctr., Inc.*, 721 F.2d 886, 889 (2d Cir.1983) ("[W]aiver offers, the language of which is ambiguous concerning "critical details"—in particular the date until which the offer remains open—violate *Savair*, notwithstanding how employees may actually construe those offers."). Yet, substantial evidence in the record as a whole supports the conclusion of the Regional Director and the Board that the Union's offer was not ambiguous, but clearly indicated that there was no linkage between a showing of pre-election Union support and a waiver of initiation fees. Accordingly, the Board did not abuse its discretion in concluding that the Union's fee waiver offer did not warrant invalidating the election.

## V.

 VSA next argues that it was entitled to an evidentiary hearing before the Board certified the representation election. Pre-certification evidentiary hearings are necessary only if there are substantial and material issues of fact relating to the validity of the election. *Columbia Cable TV Co.*, 856 F.2d at 639; *see N.L.R.B. v. Hydrotherm*, 824 F.2d 332, 335 (4th Cir.1987); *N.L.R.B. v. Bata Shoe Co.*, 377 F.2d 821, 825 (4th Cir.),

---

**18.** The leaflet poses the question "[W]hat about initiation fees and dues?" The answer does not condition the waiver on pre-election support, nor does it limit the waiver to those who vote for the Union; it merely states:

There are no initiation fees. And you start paying dues only after negotiations and after a contract has been approved and ratified by you. You start paying dues only after we have shown what we can do for you.

**19.** Affidavits submitted by VSA support this conclusion, as they indicate that Union Agent Brown (1) announced that he would waive the Union's initiation fees for all employees who were participating in the election and (2) announced at another pre-election meeting that the Union would waive initiation fees only if the Union was elected as the employees' representative on November 22, 1991, but not if the Union was defeated at the election and employees subsequently sought Teamster recognition in any future election. None of the affidavits suggest that the waiver offer either was conditioned on a showing of pre-election Union support, or was limited to those employees who voted for the Union.

*cert. denied,* 389 U.S. 917, 88 S.Ct. 238, 19 L.Ed.2d 265 (1967). Yet, an employer is not required to present evidence that presumptively establishes that its objections must be sustained before it can obtain an evidentiary hearing. *N.L.R.B. v. J–Wood/A Tappan Div.,* 720 F.2d 309, 315 (3rd Cir.1983).[20] And significantly, the allegations of the objecting party must be taken as true in determining whether or not "substantial and material factual issues" exist. *Anchor Inns, Inc., v. N.L.R.B.,* 644 F.2d 292, 297 (3rd Cir.1981). "Once the right to a hearing is established, the investigation is not a substitute for it." *Anchor Inns,* 644 F.2d at 297, quoting *N.L.R.B. v. Claxton Mfg. Co.,* 613 F.2d 1364, 1366 (5th Cir.1980), *modified* 618 F.2d 396 (5th Cir.1980). These principles, applied here, confirm that the Regional Director and Board correctly determined that no pre-certification evidentiary hearing was required.

VSA contends there were several genuine issues of material fact, including the waiver of initiation fees, that mandated the holding of an evidentiary hearing. Ultimately, VSA's objections regarding the evidentiary hearing fail. VSA submitted, and the Regional Director properly accepted as true, affidavits from VSA employees stating that Union Agent Brown made a pre-election offer to waive initiation fees. *See, e.g., N.L.R.B. v. Manufacturer's Packaging,* 645 F.2d 223, 226 n. 1 (4th Cir.1981), quoting *Bata Shoe,* 377 F.2d at 826 (An evidentiary hearing is not required when, "if all the facts supporting the position of the objecting party were credited, no ground is shown for setting aside the election."). Only after considering the evidence submitted by both VSA and the Union did the Regional Director conclude that the evidence proffered by VSA did not warrant either invalidating the election or granting VSA an evidentiary hearing.[21] And VSA, as the objecting party, failed to offer any other evidence "which prima facie would warrant setting aside" the election." *Bata Shoe,* 377 F.2d at 825; *see ARA Services, Inc., v. N.L.R.B.,* 712 F.2d 936, 937 (4th Cir.1983). Accordingly, the Board's determination that

**20.** The Third Circuit further noted that "[t]he whole purpose for the hearing is to inquire into the allegations to determine whether they are meritorious; it makes little sense to expect the employer to prove its case, especially without the power of subpoena, to the Regional Director before a hearing will be granted. *J–Wood,* 720 F.2d at 315. Yet, while it may not be reasonable to expect an employer such as VSA to document its objections "with the kind of evidence that realistically could be uncovered only by subpoena and an adversarial hearing," *J–Wood,* 720 F.2d at 316, it does not follow that an evidentiary hearing is required where, as here, the employer's evidence is insufficient to raise material issues of fact regarding an election's validity.

**21.** VSA raised several additional issues before the Regional Director that are not pursued here. First, VSA contended that the Union "threatened" employees in an attempt to "buy" endorsements, as Union Agent Brown allegedly told employees that, by signing a Union card, employees would have the "protection" of the Union if the Company took action against the employees for attending organizational meetings. The Regional Director concluded that these remarks were "nothing more than a statement of support for employees who are active union supporters," and were thus encompassed by Section 8(c) of the Act. A second claim that VSA initially made before the Regional Director was that Union representatives and/or supporters physically struck a management official in the face with a wooden board.

Finally, VSA argued that "Union representatives, agents and adherents" threatened employees and created an atmosphere of fear which inhibited employees' free choice when voting. Specifically, VSA pointed to a conversation between several employees in which one employee allegedly stated that during a previous organizing campaign, in which the employee favored union representation, he used a rifle to shoot holes in company-owned tractor-trailers. Further inquiry revealed that the statements were made during a conversation between a small number of individuals and therefore could reasonably have been found not to create a general atmosphere of "fear and intimidation" among employees, the statements were made after election ballots had been cast, the employee making the statements was neither an agent of the Union nor acting on the Union's behalf, the statements referred to an earlier election campaign, and the alleged incidents discussed were not connected to any representation campaign, but were rather part of a personal dispute. *See Herbert Halperin Distributing,* 826 F.2d at 292 (The mere fact that an employee may have made "forceful" and "somewhat threatening" statements that were "hardly commendable" does not, in itself, constitute "the sort of conduct that would require an election to be set aside."). Accordingly, the Regional Director and Board did not abuse their discretion in concluding that the alleged statements did not warrant setting the election aside.

the fee waiver at issue here did not impermissibly coerce employees into supporting the Union was not unreasonable, was supported by the substantial record evidence, and therefore was not an abuse of discretion.[22]

Essentially, then, VSA takes issue not with the legal principles applied by the Regional Director and the Board, but merely with the factual conclusions reached. We have repeatedly emphasized that a party's disagreement with the interpretation or inferences placed on facts by the Regional Director is simply not sufficient to warrant an evidentiary hearing. *Methodist Home v. N.L.R.B.*, 596 F.2d 1173, 1178 (4th Cir.1979); *see also Intertype Co. v. N.L.R.B.*, 401 F.2d 41, 44 (4th Cir.1968), *cert. denied*, 393 U.S. 1049, 89 S.Ct. 686, 21 L.Ed.2d 691 (1969). ("[T]o insist that the Board conduct a plenary hearing for every objection raised during representation proceedings would, by encouraging dissatisfied parties to engage in this dilatory tactic, prevent the prompt disposition of election cases."). In sum, the Board did not abuse its discretion in determining that the Union's offer to waive initiation fees was not impermissible under the *Savair* principle, that the evidence presented by VSA did not warrant setting aside the election, and accordingly that an evidentiary hearing was not required.

The Board's Order will be enforced.

*ENFORCEMENT GRANTED*

NIEMEYER, Circuit Judge, dissenting:

During the course of an election campaign, representatives of the Chauffeurs, Teamsters and Helpers Union, Local No. 391 ("the Union") told employees of VSA, Inc., at several pre-election meetings, that Union initiation fees, of $100, would be waived if the Union won the election, but that if the Union lost the election, the fees would not be waived for a future campaign. The details, established by employee affidavits, are not substantially in dispute:

> That after discovering that support for the Union was decreasing, R.W. Brown announced, at a Union meeting attended by other drivers, that the Union would waive initiation fees only if it was elected as the employees' representative on November 22, 1991. Brown further stated that the initiation fees would not be waived if the Union was defeated in the November 22 election and the employees subsequently attempted to gain Teamster representation in any future election.

The Union won the election by a vote of 11 to 8.

VSA objected to the representation election, contending that "union representatives conditioned a waiver of initiation fees upon a showing of pre-election support for the Union, thereby improperly inducing employees to vote for the Union." The Regional Director refused to set aside the election and the National Labor Relations Board ("the Board") affirmed and certified the Union as the bargaining representative. Because I believe that the Union's offer to waive the fees was an effort to purchase the employees' vote, since the offer was conditioned on a vote in favor of the Union, I conclude that the practice interfered with the principle of neutrality imposed by § 7 of the National Labor Relations Act, 29 U.S.C. § 157. *See NLRB v. Savair Mfg. Co.*, 414 U.S. 270, 278, 94 S.Ct. 495, 499, 38 L.Ed.2d 495 (1973). Accordingly, I would deny enforcement of

---

22. The instant election was close: a swing of only two (2) votes would have changed the outcome. VSA implies that the closeness of the election was another issue that warranted the granting of an evidentiary hearing. To be sure, *Savair* indicates that the closeness of an election counsels in favor of closer scrutiny of objections. *Savair*, 414 U.S. at 278, 94 S.Ct. at 499 (closely reviewing allegedly impermissible union waiver offer where "the change of just one vote would have resulted in a 21–21 election rather than a 22–20 election" in which the union prevailed); *see St. Margaret Memorial Hosp. v. N.L.R.B.*, 991 F.2d 1146, 1156 (3rd Cir.1993) (indicating that a "closer scrutiny" of any objection to an election is required where "a swing of two votes would have changed the result"); *United Steel Workers of America, AFL–CIO v. N.L.R.B.*, 496 F.2d 1342, 1347 n. 11 (5th Cir.1974) ("If the margin of victory in a representational campaign is very narrow, minor violations should be more closely scrutinized."). But even close scrutiny here discloses no abuse of discretion by the Board in concluding that the Union's waiver offer did not violate *Savair*, and in not granting VSA an evidentiary hearing.

the Board's order requiring negotiation pursuant to this representation election.

In *Savair*, the union offered to waive union membership initiation fees for employees who signed "recognition slips" before the representation election. While the waiver was not in any way directly tied to how the employee would vote, the Supreme Court nevertheless found the practice to interfere with the free choice of employees in the election. The Court reasoned that signed recognition slips could be used as a campaign tool by the union to solicit other votes, and thus violate the policy of assuring a fair and free choice during elections. Moreover, even though the Court recognized that signing a recognition slip did not obligate the employee to vote in a particular manner at the election, it nevertheless condemned the practice on the possibility that an employee who did sign such a recognition slip might feel obliged to carry through and vote for the union. To approve the union practice would, the Court concluded, violate the fair election policy which must "honor the right of those who oppose a union as well as those who favor it. The Act is wholly neutral when it comes to that basic choice." 414 U.S. at 278, 94 S.Ct. at 499. Because the benefit offered to the employees in this case, even though offered to all, is conditioned on a union victory, it also has the effect of urging a vote for the union and therefore cannot be neutral. An election following such an offer cannot be "fair" as defined by *Savair* and must be set aside.

The *Savair* holding was applied later by the Board in *Deming Division, Crane Co.*, 225 NLRB 657, 1976 WL 7278 (1976), where the union had agreed during an election campaign to waive initiation fees for any employee who signed an "authorization card." Concluding that the practice violated the instruction of *Savair*, the Board set aside the election, stating a principle that is directly relevant to this case:

> [A] waiver is permissible only where it is unconnected with support for the union before the election, unrelated to a vote in the election, and with support for the union before the election, unrelated to a vote in the election, and without distinction be-

tween joining the union before or after the election.

225 NLRB at 659, 1976 WL 7278.

While the benefit created by a waiver of initiation fees in the case before us is not linked to individual support, it is nevertheless linked to a successful vote for the Union with the threat that in the next election campaign, there will be no such waiver. The waiver of initiation fees was thus conditioned on a particular vote, that being one for the Union, and it clearly supplied an inducement to vote in a particular way. Thus, even though the offer was extended to all employees, its benefits could not have been realized unless the Union won and a person in doubt about how to vote might thus be influenced to vote for the Union.

A policy that sanctions this practice, I submit, is not neutral because it tends to favor the organizing effort. Stated in the prohibition established by *Deming*, the benefit is *related to the vote* in an election. This is not the same as the practice of offering an across-the-board waiver of initiation fees to all employees joining the Union, *regardless of the outcome of the vote.*

Because enforcement of the Board's order would perpetuate a non-neutral policy, I would deny enforcement of the Board's order and remand the case with directions to order a new election. I therefore respectfully dissent.