**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NATIONAL LABOR RELATIONS BOARD,
Petitioner,

v.                                                                No. 98-1311

QUEENSBORO STEEL CORPORATION,
Respondent.

On Petition for Review of an Order
of the National Labor Relations Board.
(11-CA-17745)

Argued: January 27, 1999

Decided: June 16, 2000

Before WIDENER and MURNAGHAN, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

_____

Petition for enforcement granted by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Stephen Clay Keim, EDWARDS, BALLARD, CLARK,
BARRETT & CARLSON, P.A., Winston-Salem, North Carolina, for
Queensboro. John Duncan Burgoyne, Assistant General Counsel,
NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for
Board. **ON BRIEF:** Terry A. Clark, EDWARDS, BALLARD,
CLARK, BARRETT & CARLSON, P.A., Winston-Salem, North
Carolina, for Queensboro. Frederick L. Feinstein, Acting General
Counsel, Linda Sher, Associate General Counsel, Aileen A. Arm-

strong, Deputy Associate General Counsel, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Board.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Queensboro Steel Corporation appeals to this court following a decision and order by the National Labor Relations Board (the "Board") finding Queensboro guilty of unfair labor practices in violation of sections 8(a)(5) and (1) of the National Labor Relations Act for its refusal to recognize and bargain with the Teamsters Local 391, International Brotherhood of Teamsters, AFL-CIO following the Union's election and Board certification. In this context, Queensboro contests the validity of the election in light of certain events which Queensboro asserts compromised the fairness of the proceedings. The Board seeks enforcement of its order directing Queensboro to bargain with the Union and post appropriate notice. We find that the Board did not abuse its discretion in certifying the Union and enforce the Board's order.

Queensboro operates three steel fabrication service facilities -- one in Wilmington, North Carolina; a second in Greensboro, North Carolina; and a third in Norfolk, Virginia. This case is concerned with a secret ballot election, conducted by the Board, in which the Union won the right to represent the employees at Queensboro's Greensboro facility. All forty-one of the facility's employees voted in a close election in which the Union prevailed by a single vote.

During the course of the election, rumors circulated to the effect that Queensboro had previously bribed the Boilermakers, another union, paying that union $40,000 in exchange for lighter contracts.[1]

_____

[1] It is unclear whether this alleged bribe occurred at Queensboro's Wilmington facility, where the employees are currently represented by the

2

Queensboro's evidence consisted of affidavits which revealed that, on some four occasions, Queensboro's employees were heard to have suggested that such occurred. One employee claimed that on one occasion Teamsters' organizer Chip Roth, in response to another employee's allegations, asserted something along the lines of "we work for the employees not the employer" and "we don't take bribes."[2]

The Union sought certification of the election by the Board, and following an administrative investigation into the foregoing facts, the Board concluded 1) that the rumors had been circulated by Queensboro employees, not the Union, 2) that those rumors had neither been condoned nor adopted by the Union, and 3) that even if the Union had promulgated the rumors, such conduct would not have been sufficient to set aside the election under Midland National Life Insurance Co., 263 NLRB 127 (1982). Accordingly, the Board certified the election.

Queensboro refused to recognize the Board's certification and declined to bargain with the Union. The Union then brought an unfair labor practice complaint against Queensboro, and the Board granted summary judgment for the Union finding that Queensboro's conduct violated sections 8(a)(5) and (1) of the Act.

Queensboro raises a number of issues on appeal, most of which relate back to the Board's application of Midland to deny its objections to the election. First, and principally, Queensboro claims that the Board erred in certifying the election in the face of evidence that misconduct materially affected its results. Second, Queensboro asserts error in the Board's denial of an evidentiary hearing. Third, Queens-

_____

Boilermakers, or at an earlier point in time when the employees at the Greensboro facility themselves were actually represented by the Boilermakers. Either way, the implications are substantially the same.

[2] Roth did not remember making those specific statements on the specific occasion in question. He did, however, testify to other occasions in which similar concerns were raised to him by Queensboro employees. On those occasions, he claims to have made responses similar to those attributed to him by Queensboro, which consisted of a denial of knowledge about the bribe and reassurance to the employee that, if elected, the Union would not engage in similar activity.

3

boro contests the application of <u>Midland</u> in light of the fact that the rumors imputed criminal conduct. Fourth, Queensboro cites error in the Board's failure to declare certain of its own employees to be agents of the Union, and finally, Queensboro faults the Board for failing to evaluate the situation based on a third-party interference standard.

Board-supervised elections are entitled to a presumption of validity. <u>NLRB v. Columbia Cable TV Co., Inc.</u>, 856 F.2d 636, 638 (4th Cir. 1988); <u>NLRB v. Coca-Cola Bottling Co. Consol.</u>, 132 F.3d 1001, 1003 (4th Cir. 1997). We derive this presumption from the substantial discretion Congress has bestowed upon the Board "to establish procedures and safeguards `to insure the fair and free choice of bargaining representatives by employees.'" <u>Coca-Cola Bottling</u>, 132 F.3d at 1003 (quoting <u>NLRB v. A.J. Tower Co.</u>, 329 U.S. 324, 330 (1946)). There is a "heavy burden" borne by the party seeking to invalidate a Board-supervised representation election. <u>Coca-Cola Bottling</u>, 132 F.3d at 1003 (quoting <u>NLRB v. Herbert Halperin Distrib. Corp.</u>, 826 F.2d 287, 290 (4th Cir. 1987)). In light of those principles, we are of the opinion that the Board's decision in <u>Midland</u> and our subsequent recognition of its holding in <u>Case Farms of North Carolina v. NLRB</u>, 128 F.3d 841 (4th Cir. 1997), <u>cert. denied</u>, 523 U.S. 1077 (1998), control the disposition of this case, requiring that the election results be upheld and the Board's bargaining order enforced.

In keeping with the establishment of representation election procedures, the Board, in <u>Midland</u>, reverted to an earlier standard of <u>Shopping Kart</u>, 228 N.L.R.B. 1311 (1977), regarding misrepresentations occurring in the context of campaign statements. See <u>Midland</u>, 263 NLRB at 129-33; <u>Case Farms</u>, 128 F.3d at 844. In doing so, the Board came to the conclusion that it would "no longer probe into the truth or falsity of the parties' campaign statements" nor "set elections aside on the basis of misleading campaign statements." <u>Case Farms</u>, 128 F.3d at 844 (quoting <u>Midland</u>, 263 NLRB at 133).

The single exception annunciated by the Board in <u>Midland</u> was reserved for forged documents. <u>Midland</u>, 263 NLRB at 133. The premise behind this particular exception evidences the Board's central concern that voters not be deceived with respect to the true nature of the statement in question -- campaign propaganda. <u>Midland</u>, 263

4

NLRB at 133. In doing so, the Board displayed its faith in the voters' ability not to accept what they are told at face value, but instead, to weigh it according to its potential for bias. Accordingly, the Board determined that it would "set an election aside not because of the substance of the representation, but because of the deceptive manner in which it was made, a manner which renders employees unable to evaluate the forgery for what it is." Midland , 263 NLRB at 133. The Board further distinguished misrepresentations, which would not require the election to be set aside, from other types of campaign misconduct, "such as threats, promises, or the like," which if adequately proven would continue to warrant set aside. Midland, 263 NLRB at 133.

Given the facts of this case, we cannot say that the conduct at issue failed under "the permissive Midland standard." Case Farms, 128 F.3d at 845. Even if, as Queensboro suggests, evidence were to prove 1) that the Union was responsible for the rumor started by Queensboro employees that the company had bribed another union at some point in the past and 2) that Queensboro did not in fact do so, that would still amount to a mere misrepresentation in the campaign statement context. It involved no forgery, and there is nothing in the record to indicate that the voters' ability to recognize the rumors as campaign propaganda would be compromised. Further, this conduct by the Union, if proven, would also, under the Midland standard, fail to rise to the level of an unfair labor practice.

Queensboro suggests that because the conduct it was rumored to have engaged in amounted to a violation of criminal law, the rumor somehow operates as an unfair labor practice as well as a new exception to the Midland rule. To support this argument, Queensboro relies on the Board's decision in Hillhaven Rehabilitation Ctr., 325 NLRB 202 (1997). While we would not be inclined to apply Hillhaven to this case, we need not address it because the Sixth Circuit vacated the portion of Hillhaven concerning unfair labor practices that may have pertained to this case. See Rehabilitation and Healthcare Center of Cape Coral v. NLRB, 178 F.3d 1296 (6th Cir. 1999) (unpublished). The Board has not followed the Hillhaven rule since the Sixth Circuit's action, and we decline to do so as well. Because Queensboro has no other legal support for its argument that we should find a new excep-

5

tion to the <u>Midland</u> rule, that argument merits no further consideration here.

Queensboro also cites <u>NLRB v. VSA, Inc.</u>, 24 F.3d 588, 598 n.22 (4th Cir. 1994), and suggests that the closeness of the results in this particular election warrant its set aside regardless of the Board's policy not to involve itself in disputes over campaign misrepresentations. As <u>VSA</u> recognizes, the Supreme Court has suggested that, in the context of close elections, objections require close scrutiny. See <u>VSA</u>, 24 F.3d at 598 n.22 (citing <u>NLRB v. Savvair Mfg. Co.</u>, 414 U.S. 270, 278 (1973)). That does not, however, translate into an assumption that contested elections should be set aside simply because their outcomes were close. On the contrary, in <u>VSA</u>, this court upheld a contested election where a change of two votes would have reversed the outcome finding that "even close scrutiny here discloses no abuse of discretion." <u>VSA</u>, 24 F.3d at 598 n.22. We come to the same conclusion in this case.

Queensboro further argues that the Board erred when it failed to order an evidentiary hearing regarding the election conduct it contests. As we have noted, "[p]re-certification evidentiary hearings are necessary only if there are substantial and material issues of fact relating to the validity of the election." <u>NLRB v. VSA, Inc.</u>, 24 F.3d at 588, 596 (4th Cir. 1994). Thus, in order to reach this threshold, Queensboro must demonstrate some significant dispute surrounding the factual allegations on which it bases its objections to the election. Queensboro cannot meet this threshold requirement.

There is little disagreement as to the facts of this case. While Roth is unable to recall the subject of the bribe coming up at the initial meeting as alleged by a Queensboro employee's affidavit, Roth does not dispute that similar discussions occurred during the course of the campaign. This does not amount to a substantial issue of fact. Queens-
boro is further concerned that an evidentiary hearing might have bolstered its suggestion that its employees were operating as Union agents when they spread the rumors in question. This becomes irrelevant in light of our holding that the <u>Midland</u> rule, upon the facts presented here, does not consider the truth or falsity of the rumors even

6

if the Union was responsible for them. Thus, the Board did not abuse its discretion by failing to hold an evidentiary hearing.

Finally, we address Queensboro's assertion that, in the event its initial argument proved false and the Union was not responsible for the rumors circulated by Queensboro's employees, the possible effect of those rumors on the election should have been considered under a third-party interference standard. Were that the case, we do not find the rumors significant enough to warrant setting aside the election.

We think the rule which should be applied in this case is that of Intertype Co. v. NLRB, 401 F.2d 41 (4th Cir. 1968). In that case, a rumor circulated by known union adherents attributed pro-union statements to a highly respected supervisor. The union, however, was not responsible for the employee who circulated the rumor, which was false. We held that "the test . . . is whether the rumor, even if improper, materially affected the election by precluding employees from exercising their own free choice." Intertype, 401 F.2d at 46. We are of opinion the rumor in this case, which was not attributable to the union, did not materially affect the election by precluding employees from exercising their own free choice.

Accordingly, the election will not be set aside and the petition of the NLRB is

GRANTED.

7