**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 04-2300**

─────────────

VALCOURT BUILDING SERVICES, INC., which also
may be correctly and legally known as VALCOURT
EXTERIOR BUILDING SERVICES OF NEW JERSEY, LC,

          Petitioner,

    versus

NATIONAL LABOR RELATIONS BOARD,

          Respondent,

PAINTERS DISTRICT COUNCIL 711,

          Intervenor.

─────────────

**04-2459**

─────────────

NATIONAL LABOR RELATIONS BOARD,

          Petitioner,

    and

PAINTERS DISTRICT COUNCIL 711,

          Intervenor,

    versus

VALCOURT EXTERIOR BUILDING SERVICES OF NEW
JERSEY, LC,

          Respondent.

On Petition for Review and Cross-Application for Enforcement of an Order of the National Labor Relations Board. (22-CA-26491; 99-CA-26491)

Argued: May 24, 2005                    Decided: June 24, 2005

Before WIDENER and MOTZ, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Petition for review denied and cross-application for enforcement granted by unpublished per curiam opinion.

**ARGUED:** James Joseph Kelley, II, MORGAN, LEWIS & BOCKIUS, L.L.P., Washington, D.C., for Valcourt Exterior Building Services of New Jersey, L.C. Jason Walta, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for the Board. Robert F. O'Brien, O'BRIEN, BELLAND & BUSHINSKY, L.L.C., Northfield, New Jersey, for Painters District Council 711. **ON BRIEF:** Adrienne A. Brown, MORGAN, LEWIS & BOCKIUS, L.L.P., Washington, D.C., for Valcourt Exterior Building Services of New Jersey, L.C. Arthur F. Rosenfeld, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, David Habenstreit, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for the Board.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Valcourt Building Services, Inc. petitions for review of an order of the National Labor Relations Board (NLRB). The NLRB cross-appeals, seeking enforcement of its order. For the reasons that follow, we deny Valcourt's petition for review and grant the NLRB's cross-application for enforcement of its order.

I.

On October 8, 2003, a group of Valcourt employees voted 28-21 (with four challenged ballots going uncounted) to be represented by the Painters District Council 711 (the Union).

Prior to the election, Valcourt and the Union had entered into an agreement, which provided in relevant part that: "Each party may station an equal number of authorized, nonsupervisory-employee observers at the polling places to assist in the election, to challenge the eligibility of voters, and to verify the tally." Regarding election observers, the NLRB Casehandling Manual (CHM) states: "Observers should be employees of the employer, unless a party's use of an observer who is not a current employee of the employer is reasonable under the circumstances. A supervisor should not serve as an observer." NLRB Casehandling Manual, pt. 2, Representation Proceedings § 11310.2 (1999) (citations omitted), available at http://www.nlrb.gov/nlrb/legal/manuals/chm2-7.pdf.

3

Valcourt designated Carlos Guevara, an employee, to serve as its election observer. The Union, however, designated as its observer William Geldhauser, a retired union member, who had never worked for the company but had previously served as a business agent of the Union. Following the election, Valcourt filed objections with the NLRB Regional Director, asserting that the service of Geldhauser as the Union's designated observer and use by Geldhauser of a "private, non-NLRB check list during the course of the election" improperly interfered with the election. The Union intervened in the case.

On November 17 and 19, 2003, an NLRB hearing officer heard testimony from numerous witnesses on Valcourt's objections. At that hearing, Peter Cipparulo, the Union's director of organizing, testified that he tried to find a Valcourt employee to serve as the Union's observer, but "nobody would" do it because "they were scared to come forward." Thus, several days before the election, Cipparulo called Geldhauser and asked him to serve as the Union's observer. "I wanted somebody that was not affiliated with the Union," he said. "I wanted somebody that didn't speak Spanish, so that there wasn't any concern did he communicate with them. And I tried to make it as far removed from the Union as I could and had no ties to the Union outside of being a previous member."

Cipparulo further testified that the primary reason he wanted an observer at the election was to challenge four specific ballots.

4

Geldhauser's testimony corroborated this explanation. Geldhauser testified that he brought with him to the election a "four-inch by four-inch piece of paper" on which he had written the names of four people whom Cipparulo had asked him to challenge. Valcourt witnesses disputed Geldhauser's description of his list as inconspicuous, and further contended that the list was clearly visible to voters in the election.

On January 8, 2004, the hearing officer issued a lengthy and thorough report, recommending that Valcourt's objections be overruled. The hearing officer found that Geldhauser "testified in a forthright manner" and was a "far more credible witness than the five employee witnesses called" by Valcourt, who "repeatedly contradicted themselves." The hearing officer determined that "none of the voters recognized Geldhauser or anticipated that he would ever be in a position to influence their terms or conditions of employment." With respect to Geldhauser's list, the hearing officer further found:

> Geldhauser maintained a handwritten list of four voters he intended to challenge. He did not check off the names of voters, record their names, or make comments about the voters. There is no evidence that Geldhauser knew which voters supported the Union, which voters did not, or which voters (if any) had documentation problems pertaining to their immigration status. Further, he endeavored to conceal his private list by keeping it under the table, as directed by Board agents . . . . The record reflects that these efforts were largely successful. For this reason, most witnesses were unable to describe Geldhauser's list or estimate the number of names it contained. In fact, all five employee witnesses

5

> admitted that they never saw any of the names on the list.

J.A. 292-93 (footnote omitted).  After Valcourt filed exceptions to the report, the Board adopted the hearing officer's findings and recommendations and certified the Union as the "exclusive collective-bargaining representative of . . . [a]ll restoration division mechanics including foremen and drivers employed by [Valcourt]."

Following efforts by the Union to bargain with Valcourt, and Valcourt's refusal to recognize the Union as the representative of its employees, the General Counsel of the NLRB filed suit against Valcourt for violating Sections 8(a)(1) and (5) of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 158(a)(1), (5) (2000).  On September 30, 2004, the Board granted the General Counsel's motion for summary judgment and ordered Valcourt to bargain with the Union.  Valcourt then filed this petition for review and the NLRB filed a cross-application for enforcement of the Board's order.

## II.

The issue presented to us is whether the Board abused its discretion in certifying the Union as the duly elected collective bargaining representative and therefore erred in finding Valcourt to have violated §§ 8(a)(1) and (5) of the NLRA.  We "presume a Board-supervised election to be valid, and . . . may overturn such an election only if the Board has clearly abused its discretion."

6

NLRB v. Media Gen. Operations, Inc., 360 F.3d 434, 441 (4th Cir. 2004). We have explained that the presumption of validity of Board-certified elections:

> is not an insubstantial presumption; it can be overcome only by presentation of specific evidence not only that the alleged acts of interference occurred but also that such acts sufficiently inhibited the free choice of employees as to affect materially the results of the election. And the burden is on . . . the objecting party, to show that the challenged activity prejudiced the outcome of the election. Significantly, if the Board's certification decision is reasonable and based on substantial evidence in the record as a whole, then our inquiry is at an end. Given this rigorous standard, courts appropriately proceed with judicial caution before overturning a representation election.

NLRB v. VSA, Inc., 24 F.3d 588, 591-92 (4th Cir. 1994) (internal quotation marks and citations omitted).

Valcourt specifically disclaims any challenge to the "factual and credibility determinations" made by the hearing officer and adopted by the Board. Rather, the company contends only that certain alleged legal errors, either "alone" or "in the aggregate" require "setting aside the election."

A.

First, Valcourt challenges the service of Geldhauser, a non-employee and former Union business agent, as the designated Union observer. Valcourt asserts that, because the designation of Geldhauser assertedly violates the CHM and the stipulated election

7

agreement, we must set aside the election.  The argument is meritless.

We note at the outset that it is not at all clear that the designation of Geldhauser violates either the CHM or the stipulated agreement.  The CHM merely provides that "[o]bservers should be employees of the employer, unless a party's use of an observer who is not a current employee of the employer is reasonable under the circumstances."  NLRB Casehandling Manual, supra, § 11310.2 (emphases added).  Here, Cipparulo provided a reasonable explanation for the use of Geldhauser: the Union could find no Valcourt employee to serve as the Union's observer, since "the[] [employees] were scared to come forward."  Similarly, the stipulated agreement simply permits each party to designate "nonsupervisory-employee observers."  At the very least, this phrase is ambiguous: it could, as Valcourt contends, require that observers be employees who are not supervisory employees, or it could simply ban the use of supervisory employees as observers.

Furthermore, even if the Union's designation of Geldhauser did violate the CHM and the stipulated agreement, this minor irregularity does not require invalidation of the election.  Indeed, the authority on which Valcourt itself relies directly supports our conclusion.  For example, in NLRB v. Black Bull Carting Inc., 29 F.3d 44 (2d Cir. 1994), the court refused to overturn a representation election even though a union official

8

served as the union's election observer <u>and</u> the CHM in effect at the time did <u>require</u> that observers be "'non-supervisory employees of the employer, unless a written agreement' by the parties 'provides otherwise.'" <u>Id</u>. at 45-46. The Second Circuit explained:

> A party seeking to overturn an election on the ground of a procedural irregularity has a heavy burden. The presence of such an irregularity is not in itself sufficient to overturn an election. Nor is it sufficient for a party to show merely a 'possibility' that the election was unfair. Rather, the challenger must come forward with evidence of actual prejudice resulting from the challenged circumstances.

<u>Id</u>. at 46 (citations omitted). Similarly, another decision relied on by Valcourt, <u>D.E.O. Enters., Inc.</u>, 309 NLRB 578, 579 (1992), holds that even though use of a former supervisor-employee as a union election observer constituted "a technical breach of the Stipulated Election Agreement," the breach did not require that the election be overturned because "the breach was neither material nor made in bad faith."

B.

Valcourt also argues that Geldhauser's maintenance of an assertedly impermissible list constitutes ground for setting aside the election. Valcourt bases this argument on a purported "<u>per</u> <u>se</u> rule against list keeping of any kind during an election." However, no such rule exists. Again, even the authority relied on by Valcourt contradicts its position. <u>See</u> <u>Days Inn Mgmt. Co. v.</u>

9

NLRB, 930 F.2d 211, 214 (2d Cir. 1991) (holding that "use of a list containing names of eligible voters must be viewed in its context and may not be considered a per se violation of Section 8(a)(1)").

Furthermore, the Board has specifically ruled that use of a list for the purpose of keeping track of voter challenges is permitted. As the Board has explained:

> It is well established that the keeping of a list of who has or has not voted, aside from the official Excelsior list, may be grounds for setting aside an election. The purpose of this prohibition is to protect employees from fear of reprisal or discipline because they did or did not vote. However, the Board has long recognized the right to refer to a challenge list as an exception to the general prohibition against keeping lists, in order to ensure that the parties have a full opportunity to challenge the ballots of voters they believe to be ineligible.

Mead Coated Board, Inc., 337 NLRB 497, 497-98 (2002) (citations omitted); see also St. Elizabeth Cmty. Hosp. v. NLRB, 708 F.2d 1436, 1443-44 (9th Cir. 1983); Sound Refining, Inc., 267 NLRB 1301, 1301 & n.5 (1983).[*]

In this case, the hearing officer found that "Geldhauser maintained a handwritten list of four voters he intended to challenge" and that "none of the voters recognized Geldhauser or anticipated that he would ever be in a position to influence their terms or conditions of employment." This finding is hardly clearly

---

[*]Valcourt also points to the CHM in support of its argument that Geldhauser's list was unauthorized. However, the CHM specifically provides that "[o]bservers may bring to the election lists of employees they intend to challenge." NLRB Casehandling Manual, supra, § 11312.4.

erroneous; indeed, Valcourt does not so assert. Accordingly, Geldhauser's list cannot constitute grounds for overturning the election.

## C.

Valcourt additionally argues that the "special nature" of the bargaining unit warrants particularly strict adherence to election procedures. Apparently, Valcourt maintains that because Hispanic workers predominate its workforce, "most [of whom] do not speak or understand English," extra scrutiny should be given to the election procedures.

This argument also fails. First, any irregularities that existed were minor and not "sufficient to overturn [the] election." Black Bull Carting Inc., 29 F.3d at 46. Valcourt has not presented any compelling evidence of "actual prejudice resulting from the challenged circumstances." Id. Further, Valcourt has not cited any cases in support of overturning a representation election due to the ethnicity, origin, or language skills of the bargaining unit. The case on which Valcourt primarily relies does not apply here. See Robert Orr-Sysco Food Servs., LLC, 338 NLRB 614 (2002) (overturning election in part because one employee threatened another with deportation). Moreover, as the NLRB points out, Valcourt presented "no evidence . . . at the hearing" (other than

11

the fact that many of Valcourt's employees are Hispanic immigrants) to support this claim.

D.

Finally, Valcourt asserts that the alleged errors discussed herein "in the aggregate" warrant setting aside the election. We disagree. The minor procedural irregularities challenged here do not, even in combination, meet the heavy burden necessary to overturn a Board-certified election.

III.

For the foregoing reasons, Valcourt's petition for review is denied and the Board's cross-application for enforcement is granted.

PETITION FOR REVIEW DENIED AND
CROSS-APPLICATION FOR ENFORCEMENT GRANTED