NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

HYDROTHERM, INC., Respondent.

No. 86–3652.

United States Court of Appeals,
Fourth Circuit.

Argued May 7, 1987.

Decided Aug. 5, 1987.

Frank L. Kollman (Blum, Yumkas, Mailman, Gutman & Denick, P.A., Baltimore, Md., on brief) for respondent.

Joseph A. Oertel, N.L.R.B. (Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Linda Dreeben, Supervisory Atty., Washington, D.C., on brief) for petitioner.

Before WINTER, Chief Judge, HARVEY, Chief United States District Judge for the District of Maryland, sitting by designation and SMALKIN, United States District Judge for the District of Maryland, sitting by designation.

ALEXANDER HARVEY, II, District Judge:

In this proceeding, the National Labor Relations Board ("the Board") invokes our jurisdiction under 29 U.S.C. § 160(e) to enforce its order of August 7, 1986. In its decision and order of that date, the Board adopted the recommended order of an Administrative Law Judge directing respondent Hydrotherm, Inc. ("the company") to cease and desist from refusing to recognize and bargain collectively with the Petroleum, Construction, Tank Line Drivers and Allied Employees Local Union No. 311 a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America [1] ("the union") as the exclusive representative of its employees. The company was further affirmatively ordered to bargain with the union as the exclusive representative of the company's employees. Opposing enforcement, the company asserts that the Board erred as a matter of law or abused its discretion in certifying the union as the exclusive representative of its employees. For the reasons that follow,

---

**1.** The parties in their briefs have so designated the union, although the Board's certification has been amended to reflect the merger of this union with another local.

enforcement of the Board's order of August 7, 1986 will be granted.

## I

On March 22, 1983, the union petitioned the Board's Regional Director to conduct a representation election in a unit of the company's production and maintenance employees. Accordingly, on May 12, 1983, the Board's Regional Director conducted a representation election pursuant to Section 9 of the National Labor Relations Act (hereinafter "the NLRA"), 29 U.S.C. § 159. Fifty-nine employees voted in favor of representation by the union, and fifty-six employees voted against such representation.

The company timely filed nineteen objections to the election, alleging that agents and supporters of the union improperly interfered with employees' free choice in the election. The Board's Regional Director conducted an investigation and recommended in his Report on Challenges and Objections ("the Report") that the Board overrule the company's objections and certify the union as the exclusive bargaining representative. The company filed timely objections to the Report. On June 11, 1984, the Board in a two-to-one vote, overruled the company's objections to the election and certified the union as the exclusive representative of the company's production and maintenance employees.

Shortly after certification, the union requested that the company enter into collective bargaining. The company rejected the union's request, and the union subsequently filed an unfair labor practice charge with the Board. The Board's Regional Director thereafter issued a complaint alleging that the company's refusal to bargain violated Sections 8(a)(5) and (1) of the NLRA, 29 U.S.C. § 158(a)(5) and (1). The company filed an answer admitting that it had refused to bargain, but denying that the union had been properly certified. Following a hearing, an Administrative Law Judge ("ALJ") rendered a Decision dated December 21, 1984, concluding that the company had engaged in unfair labor practices by improperly refusing to bargain with the union. By its order of August 7, 1986, the Board adopted the findings and conclusions of the ALJ.

## II

Well established principles of law govern our consideration of a challenge of this sort to a representation election. Congress has entrusted the Board with a wide degree of discretion in establishing procedures and safeguards necessary to insure the fair and free choice of bargaining representatives by employees. *NLRB v. A.J. Tower Co.,* 329 U.S. 324, 330, 67 S.Ct. 324, 327, 91 L.Ed. 322 (1946). "The specialized functions of the Board, such as ... the identification of an unacceptable degree of interference with free choice in union elections, require a quality and degree of expertise uniquely within the domain of the Board." *NLRB v. Klingler Electric Corporation,* 656 F.2d 76, 85 (5th Cir.1981). If the Board's decision is reasonable and based on substantial evidence in the record considered as a whole, our inquiry is at an end. *Id.* "The determination of a valid election is within the sound discretion of the Board, and the Board should be reversed only when it has abused its discretion." *NLRB v. Manufacturer's Packaging Co., Inc.,* 645 F.2d 223, 225 (4th Cir.1981).

When pre-election conduct is alleged to have invalidated a representation election, the company, as the party seeking to overturn the election, bears the burden of proving that campaign improprieties prevented a fair election. *NLRB v. Mattison Machine Works,* 365 U.S. 123, 81 S.Ct. 434, 5 L.Ed.2d 455 (1961); *NLRB v. Manufacturer's Packaging Co., Inc.,* 645 F.2d at 225. The challenging party's burden is "to show by specific evidence not only that unlawful acts occurred but also that such acts sufficiently inhibited the free choice of employees as to affect materially the results of the election." *NLRB v. Handy Hardware Wholesale, Inc.,* 542 F.2d 935, 938 (5th Cir.1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2675, 53 L.Ed.2d 271 (1977).

## III

Although the company states in its brief that it is presenting to this Court six of its

objections to the representation election, in actuality the company has here presented us with three principal grounds for overturning the election. First, the company argues that the certification election was invalid because a supervisor employed by the company allegedly threatened an employee before the election with discharge if he did not support the union.

The challenged election was held on May 12, 1983. Some two months before the election, Mark Vandevander, a statutory supervisor within the meaning of § 2(11) of the NLRA, threatened employee George Amend with discharge if he did not sign a union authorization/membership card. Some six weeks before the election Vandevander was subsequently discharged by the company because of poor work performance. On April 11, 1983, the union filed an unfair labor practice charge on behalf of Vandevander seeking his reinstatement. That charge was pending throughout the pre-election period and was finally dismissed on May 20, 1983, eight days after the election.

■ As argued by the company, an election may be set aside if a supervisor's activities "contain the seeds of potential reprisal, punishment, or intimidation." *NLRB v. Manufacturer's Packaging Co., Inc,* 645 F.2d at 226. However, we agree with the Board's determination that the company has not met its burden of showing that pro-union activity by Vandevander interfered with the election. The Board reasonably concluded that Vandevander's alleged threats could not have interfered with the election because it was not possible, in view of his discharge, for the threats to have been carried out. *Rocky Mountain Bank Note Co.,* 230 NLRB 922, 923 (1977); *Stevenson Equipment Co.,* 179 NLRB 865, 866 (1969).

The company contends that the election should nonetheless be invalidated because an unfair labor practice charge filed on Vandevander's behalf by the union was pending during the preelection period and that therefore Vandevander's rehiring was anticipated by employees. However, in determining the likelihood of coercion where the employer has discharged a pro-union supervisor, the Board must consider whether the employees had a reasonable expectation of his reinstatement. *Rocky Mountain Bank Note Co.,* 230 NLRB 922, 923 (1977). The company has presented no evidence here to demonstrate that its employees knew of the pending unfair labor practice charge or had any expectation that Vandevander would be reinstated.

The situation presented here is therefore distinguishable from *NLRB v. Howard Johnson Motor Lodge,* 705 F.2d 932 (7th Cir.1983), a case cited by the company. In denying enforcement of the Board's order, the Court in *Howard Johnson* noted that the supervisor, who had before her discharge threatened employees, had told employees after her discharge that she would get her job back with full back pay. In this case, the company has presented no evidence of statements made by Vandevander or by any one else after his discharge which would have created a reasonable expectation that he would be reinstated. We therefore conclude that there is substantial evidence supporting the Board's finding that supervisor Vandevander's alleged threat against an employee did not interfere with the employees' free choice in the certification election.

■ Alternatively, the company argues that the Board erred in certifying the union without holding a hearing to investigate the company's allegedly *prima facie* showing that Vandevander's actions tainted the election. We see no merit to this argument. A hearing is necessary if it is shown that there are substantial and material issues of disputed fact relating to the validity of the election. *NLRB v. Manufacturer's Packaging Company, Inc.,* 645 F.2d at 226 n. 1. To be entitled to a hearing, the objecting party must make a proffer of evidence "which *prima facie* would warrant setting aside the election." *NLRB v. Bata Shoe Co.,* 377 F.2d 821, 826 (4th Cir.1967), *cert. denied,* 389 U.S. 917, 88 S.Ct. 238, 19 L.Ed.2d 265 (1967). The company has made no offer of proof which would support findings contrary to those of the Regional Director. In fact, the compa-

ny has acknowledged that "[i]n this case, the evidence is uncontroverted, so there is no unresolved issue of fact."[2] Thus, the Board did not abuse its discretion in refusing to grant the company a hearing.

## IV

The company's second ground for challenging the representation election is that an organizer improperly conditioned the union's waiver of initiation fees on the signing by employees of union authorization cards. Specifically, about a month before the election, a rumor began to circulate among the employees that if the union were certified, a $200 fine would be levied against employees who had not signed authorization cards before the election. As a result of this rumor, one employee approached union representative Charles Greason and asked him if such a fine would be imposed. Greason told the employee that there would be no fine and that the card was "an application to get the union into the plant." Greason further stated that there would be an initiation fee, but he did not say how much the initiation fee would be.

▆▆▆ A waiver of initiation fees conditioned upon the signing of a union authorization card prior to an election is improper and must result in the setting aside of a union victory. *NLRB v. Savair Manufacturing Co.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973). However, the company has presented no evidence in this case that such an improper waiver of initiation fees occurred before the representation election. In his response to the employee's inquiry, union representative Greason clearly and specifically repudiated the rumor that a $200 fine would be imposed by the union on employees who did not sign union authorization cards before the election. Greason's statement concerning the initiation fee did no more than refer to the initial financial obligation which all union members would incur if the union were certified.

Accordingly, we conclude that the Board had substantial evidence before it to reject

this second ground advanced by the company in seeking to overturn this election.

## V

As its third ground of challenge to the election, the company asserts that employees were threatened with harm for not supporting the union and that acts of vandalism created an atmosphere of fear and coercion before the election. In support of this contention, the company points to evidence in the record indicating that when George Amend (the employee threatened with discharge by Vandevander) refused to sign an authorization card, another employee threatened "to get even with" him. On May 13, 1983, one day after the election, Amend found his locker covered with union stickers, while the lockers of other employees were left untouched. On that same date, Amend found at his work station that a photograph of himself had been vandalized and that over his station a picture of a rat had been drawn on an exhaust duct with "Co Rat" written in the middle.

Shortly before the election, another employee, Sylvia McGuire, had her photograph cut from the company newspaper, covered with a union sticker, and put on an overhead conveyor belt. Evidence was also submitted that two employees, John Heath and David Kistner, were allegedly exposed to potentially dangerous pranks because they refused to support the union. However, when interviewed by the Board, Kistner denied ever being the victim of pranks. Heath in turn stated that pranks were common in the department, and he felt that the number of pranks played on him after the union's organizing campaign had not increased when compared to those occurring earlier.

Finally, the company relies on evidence that employee Gloria Preston's car was vandalized several days after she spoke out against the union at an employee meeting. At least one other employee was allegedly aware that this incident of vandalism occurred to Preston's car.

2. Respondent's Brief, p. 13.

The Board and this Court have recognized that, when assessing the probable impact of particular incidents on election results, conduct which is not attributable to either the employer or the union is accorded less weight. *Abbott Laboratories, Ross Laboratories Division v. NLRB*, 540 F.2d 662, 667 (4th Cir.1976), *cert. denied*, 429 U.S. 831, 97 S.Ct. 93, 50 L.Ed.2d 95 (1976); *Orleans Manufacturing Company*, 120 NLRB 630, 633 (1958). Furthermore, "[t]o hold that an improper comment by one not subject to the control of either party must necessarily invalidate a representation election would constitute an unreasonably strict standard that might well prevent the holding of a valid election." *Intertype Company v. NLRB*, 401 F.2d 41, 46 (4th Cir.1968), *cert. denied*, 393 U.S. 1049, 89 S.Ct. 686, 21 L.Ed.2d 691 (1969). Election results will be overturned on the basis of third party threats only where the conduct is "so aggravated that a free expression of choice of representation is impossible." *Bush Hog, Inc. v. NLRB*, 420 F.2d 1266, 1269 (5th Cir.1969).

Applying these principles here, we must likewise reject this third ground advanced by the company in seeking to overturn the representation election. We agree with the Regional Director's finding that the company presented no evidence that employees were in any way coerced or that the pre-election campaign was conducted in an atmosphere prohibitive to the holding of a fair election.

There was no evidence presented of physical harm or threatened physical harm during the campaign. The isolated threat made by an unidentified employee to get even with employee Amend if he did not sign a union card did not involve any specific indication of physical harm and was little more than the kind of impulsive statement that employees make in the heat of an election campaign. Such threats are deemed to be less coercive than those of a union or an employer, and employees are credited with the ability, from experience in the workplace, to give appropriate weight to possibly impulsive statements made by fellow employees in the heat of a campaign. *NLRB v. ARA Services, Inc.*, 717 F.2d 57, 66 (3d Cir.1983). Furthermore, the incidents involving the posting of union stickers on Amend's locker and the vandalizing of his photographs were not discovered by Amend until *after* the election. The pasting of a union sticker on Sylvia McGuire's picture, while upsetting to her, did not convey any threat of physical harm.

The company's evidence concerning alleged pranks played on employees Heath and Kistner does not support the setting aside of the election, particularly since both employees denied that anything had occurred prior to the election which was out of the ordinary. Finally, the company failed to show that the breaking of an employee's car window was attributable to the union's organizing campaign. In any event, courts have recognized that a minor incident of property damage is not enough to overturn an election. *Amalgamated Clothing and Textile Workers Union v. NLRB*, 736 F.2d 1559, 1568–69 (D.C.Cir. 1984).

The cases relied upon by the company in which third party threats resulted in the setting aside of an election involved much more severe and pervasive threats than are present in the instant case. Here, the company has failed to show that third parties created such an atmosphere of fear and reprisal that employees were coerced or intimidated. There has been no showing here of an unacceptable degree of interference with the employees' free choice in this union election. For these reasons, we must reject the company's argument that this election should be overturned because of isolated threats and acts of vandalism which occurred prior to the election.

Accordingly, we cannot conclude that the Board abused its discretion in refusing to overturn this election. Since the election was valid, the company had a duty to bargain with the union, and its refusal to bargain constituted an unfair labor practice. We therefore grant enforcement of the Board's order.

ENFORCEMENT GRANTED.