**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HEALTH CARE & RETIREMENT
CORPORATION, d/b/a Heartland of
Martinsburg,
<u>Petitioner,</u>

No. 95-2493

v.

NATIONAL LABOR RELATIONS BOARD,
<u>Respondent.</u>

NATIONAL LABOR RELATIONS BOARD,
<u>Petitioner,</u>

v.

No. 95-2676

HEALTH CARE & RETIREMENT
CORPORATION, d/b/a Heartland of
Martinsburg,
<u>Respondent.</u>

On Petition for Review and Cross-application for Enforcement of
an Order of the National Labor Relations Board.
(5-CA-25281)

Submitted: August 30, 1996

Decided: November 4, 1996

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Thomas S. Giotto, John C. Pekar, KLETT, LIEBER, ROONEY & SCHORLING, Pittsburgh, Pennsylvania, for Health Care. Frederick L. Feinstein, General Counsel, Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Paul J. Spielberg, Deputy Assistant General Counsel, Jill A. Griffin, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for NLRB.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

I.

This case comes before us on direct appeal from a decision and order of the National Labor Relations Board (Board). Health Care & Retirement Corporation, d/b/a Heartland of Martinsburg (Heartland), petitions for review of the Board's final order that Heartland engaged in unfair labor practices in violation of §§ 8(a)(1) and (5) of the National Labor Relations Act (NLRA), 29 U.S.C.A.§§ 158(a)(1) and (5) (West 1970 & Supp. 1996). The General Counsel has filed a cross-petition for enforcement of its order. We find the order supported by substantial evidence and grant enforcement.

Heartland is a 120-bed nursing home located in Martinsburg, West Virginia. In July 1993, Heartland employees elected District 1199, the Health Care and Social Services Union, SEIU, AFL-CIO (Union) as their representative. After a hearing, the Board certified the Union as the exclusive collective bargaining representative of all full-time and part-time service and maintenance employees at Heartland, including certified nursing assistants (CNAs).

2

In May 1995, the General Counsel issued a complaint alleging that Heartland refused to bargain with the Union and to provide requested relevant information. The Board granted summary judgment to the General Counsel and concluded that Heartland had engaged in unfair labor practices. Heartland filed a timely petition in this court for review of the Board's decision. The General Counsel filed a cross-petition for enforcement of the Order.

II.

The results of a Board-supervised representation election are presumptively valid. N.L.R.B. v. Columbia Cable T.V. Co., 856 F.2d 636, 638 (4th Cir. 1988). This presumption can be overcome only by "specific evidence not only that the alleged acts of interference occurred but also that such acts sufficiently inhibited the free choice of employees as to affect materially the results of the election." Id. at 638 (quoting N.L.R.B. v. Hydrotherm, Inc., 824 F.2d 332, 334 (4th Cir. 1987)). As the objecting party, it is Heartland's burden to show that the challenged activity prejudiced the outcome of the election. See N.L.R.B. v. Manufacturer's Packaging Co., 645 F.2d 223, 225 (4th Cir. 1981). Significantly, if the Board's certification decision is reasonable and based on substantial evidence in the record as a whole, then our inquiry is finished. Hydrotherm, 824 F.2d at 334 (quoting N.L.R.B. v. Klingler Elec. Corp., 656 F.2d 76, 85 (5th Cir. Unit A July 1981)); see Universal Camera Corp. v. N.L.R.B. , 340 U.S. 474 (1951). Assessing the validity of a representation election "is within the sound discretion of the Board, and the Board should be reversed only when it has abused its discretion." Manufacturer's Packaging Co., 645 F.2d at 225.

Because Heartland admits that it refused to bargain with the Union or provide it with the requested information, the sole issue presented is whether the Board acted within its discretion in overruling Heartland's objections and certifying the Union.

A.

First, Heartland contends that pro-union activity by the LPNs fatally tainted the election. The record reveals that once they were informed that they were considered supervisors, most of the LPNs

3

advised the CNAs of their status and stopped participating in the campaign. Only three LPNs continued to speak to the CNAs in favor of the Union. All were reported to have stated that the Union would be beneficial to employees and that they hoped the union would be voted in.

The Hearing Officer found and the General Counsel concedes that the LPNs are supervisors of the CNAs. Therefore, the sole issue presented with respect to the LPNs is whether their pro-union activities coerced the CNAs into supporting the union out of fear of future retaliation by the LPNs or with the hope of reward. Pacific Physicians Serv. d/b/a U.S. Family Care San Bernardino, 313 N.L.R.B. 1176 (1994), enforced, 70 F.3d 638 (D.C. Cir. 1995). In determining whether supervisors' conduct could reasonably tend to coerce employees, the Board considers both the extent of the supervisors' authority and the extent of their pro-union activity. Cal-Western Transp., 283 N.L.R.B. 453 (1987), enforced , 870 F.2d 1481, 1484 (9th Cir. 1989).

The Hearing Officer, affirmed by the Board, reasonably concluded that the remarks at issue were simply general statements pointing out the possible benefits of union representation and contained no intimation of reward or punishment for supporting or refusing to support the Union. Likewise, LPN Wiltshire's participation in a mass Union march, even combined with the other comments described above, simply did not suffice to prejudice the election. We therefore hold that the Board's finding that the LPNs' pro-union conduct was not objectionable is supported by substantial evidence.

B.

Heartland also maintains that Union organizer Robin Ball and Union organizing committee member Sharon Hudson engaged in pre-election behavior which inhibited employees' free choice in the election. The record reveals evidence concerning three incidents involving Ball which Heartland contends were objectionable. Two incidents involved Union marches on the facility in which heated words were exchanged between Ball and Heartland management.

The third incident took place eight days before the election in the parking lot of Heartland's facility. Ball and up to thirty Union sup-

porters marched on the facility and confronted management in another heated encounter. When a security guard placed his hand on a stun gun and denied entry to a Union supporter, Ball stated that she could act like a bitch if provoked, and that if the guard used his gun, she would return on election day with 500 mineworkers in support of the Union.

Heartland contends that Ball's statement concerning the mineworkers created an atmosphere of fear and intimidation because Heartland's employees were well aware of an incident that took place at another nursing home in West Virginia in which miners helped strikers take over the facility, allegedly causing damage and resident deaths. However, it is not clear from the record who even heard this comment. No evidence established that the remark was heard by unit employees or that non-unit employees heard the comment and disseminated it to others eligible to vote.

Also during the campaign, Union organizing committee member Sharon Hudson commented to the husband of a Heartland worker out on worker's compensation that his wife should mind her own business when it came to the election because Hudson and others knew that the worker went dancing as "therapy" for her knee injury. Hudson testified that this comment was made in jest. Noting that there was no evidence that Hudson was a Union agent, the Board evaluated the alleged threat under the standard for alleged third party misconduct: whether the threat created a general atmosphere of fear and reprisal rendering a free election impossible. See Westwood Horizons Hotel, 270 N.L.R.B. 802, 803 (1984). The Board correctly found that Mallot's "dance therapy" was apparently a matter of common knowledge that was disseminated by Mallot herself. Therefore, the Board reasoned, the possibility of the management or others finding out about her activity could not be considered a true threat, since her method of therapy was not a secret.

The last series of conduct at issue is that of Alonzo Macali, the husband of a former Heartland employee who was discharged in 1992. After his wife's discharge, Macali came to Heartland with a video camera and videotaped several times, both before and during the election campaign.

5

Videotaping or photographing of employees may be objectionable conduct sufficient to set aside an election depending on the circumstances. Heartland maintains that Macali aligned himself with the Union and was a Union agent when he videotaped employees interacting with Union agents during the campaign. Common law principles of agency apply in determining whether an individual is acting as the Union's agent for purposes of the NLRA. Alliance Rubber Co., 286 N.L.R.B. 645 (1987). Authority of an agent to act may be implied or apparent. 29 U.S.C.A. § 152(13) (West 1970 & Supp. 1996). Here, the issue is whether Macali's actions were attributable to the Union under the doctrine of apparent authority. Apparent authority is created "through a manifestation by the principal to a third party that supplies a reasonable basis for the latter to believe that the principal has authorized the alleged agent to do the acts in question." Service Employees Local 87 (West Bay Maintenance), 291 N.L.R.B. 82, 82-83 (1988) (citing N.L.R.B. v. Donkin's Inn, Inc., 532 F.2d 138 (9th Cir.), cert. denied, 429 U.S. 895 (1976), and Alliance Rubber Co., 286 N.L.R.B. at 646 n.4).

Substantial evidence in the record supports the Hearing Officer's conclusion that Macali was not an agent of the Union. The evidence shows that Macali supported the workers but was not on the Union organizing committee. He passed out literature but did not wear Union paraphernalia. Macali was not invited to the marches and was not directed by the Union to take videos.* While Union organizing committee member Hudson did testify that she watched the tapes because she liked watching the progress of the campaign, there is no evidence in the record that employees were aware of this. Further, Macali did not appear with Union organizers alone during their individual visits to the facility. Rather, Macali appeared at Heartland for mass demonstrations with other nonemployee Union supporters. As correctly noted by the Hearing Officer, such generalized Union conduct does not establish apparent authority and thus agency status. To conclude otherwise would mean that anyone who handed out literature of a party to any election would be deemed an agent of that party.

_____

*The record supports the conclusion that the Union did not exercise control over Macali's videotaping. Union supporter Hudson testified that "[u]s workers we didn't object and Robin[Ball] felt that since it was us, she didn't have any right to say anything about it."

6

Millard Processing Servs., Inc., 304 N.L.R.B. 770 (1991), enforced, 2 F.3d 258 (8th Cir. 1993), cert. denied, 510 U.S. 1092 (1994); see NLRB v. Herbert Halperin Distrib. Corp., 826 F.2d 287, 290-91 (4th Cir. 1987) ("The Act . . . encourages a free-wheeling debate during the election process. Not [everyone] who supports the union or speaks in its favor is a Union agent").

Because Macali was not an agent of the Union, the proper inquiry for assessing the impact of his third-party conduct on the election is whether Macali's actions could reasonably have created a general atmosphere of fear and coercion that made free choice impossible. Pepsi-Cola Bottling Co., 289 N.L.R.B. 736 (1988). We find substantial evidence supports the Hearing Officer's conclusion that Macali's actions did not. The evidence showed that Macali began videotaping at Heartland well before the election campaign, and Sharon Hudson testified that Macali videotaped as a hobby. There is no evidence that the tapes were used for reprisals. On two occasions, both before the election campaign, Macali used profanity and made threats to Heartland employees. Heartland contends that Macali's odd pre-campaign behavior tainted the campaign because of his later support of the Union. On the contrary, the evidence suggests that if anyone feared Macali it was due to his behavior beginning prior to the campaign, evidently fueled by anger at his wife's discharge. His personally motivated concerns were not sufficiently tied to the Union to exert the specific coercion alleged by Heartland. We agree with the Hearing Officer that the evidence was insufficient to establish that Macali's conduct created an atmosphere which made free choice in the election impossible.

Even considered cumulatively, the evidence of misconduct in this case has not been shown to have prejudiced the election. We therefore hold that the Board's decision is consistent with the law and is supported by substantial evidence in the record. For that reason, the Board's decision finding Heartland engaged in unfair labor practices is affirmed, and the petition to enforce is granted. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7