**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

YUASA EXIDE, INCORPORATED,
Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD;

No. 96-1511

Respondent,

INTERNATIONAL UNION OF ELECTRONIC,
ELECTRICAL, SALARIED, MACHINE AND
FURNITURE WORKERS, AFL-CIO,
Intervenor.

NATIONAL LABOR RELATIONS BOARD;
Petitioner,

INTERNATIONAL UNION OF ELECTRONIC,
ELECTRICAL, SALARIED, MACHINE AND
FURNITURE WORKERS, AFL-CIO,

No. 96-1467

Intervenor,

v.

YUASA EXIDE, INCORPORATED,
Respondent.

On Petition for Review and Cross-Application for
Enforcement of an Order of the National Labor Relations Board.
(11-CA-16851)

Argued: March 5, 1997

Decided: August 5, 1997

Before HALL and ERVIN, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

Petition for review denied and enforcement granted by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Steven Warren, JACKSON, LEWIS, SCHNITZ-LER & KRUPMAN, Greenville, South Carolina, for Petitioner. Meredith L. Jason, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent. Peter Edward Mitchell, Associate General Counsel, INTERNATIONAL UNION OF ELECTRONIC, ELECTRICAL, SALARIED, MACHINE AND FURNITURE WORKERS, AFL-CIO, Washington, D.C., for Intervenor. **ON BRIEF:** Stephen F. Fisher, JACKSON, LEWIS, SCHNITZLER & KRUPMAN, Greenville, South Carolina, for Petitioner. Frederick L. Feinstein, General Counsel, Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Linda Dreeben, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Yuasa Exide, Inc., petitions for review of the National Labor Relations Board's decision and order directing that it bargain with the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL-CIO as the certified representative of the employees at Yuasa's plant in Sumter, South Carolina. The Board cross-applies for enforcement of its order, and we have granted the Union leave to intervene in support of the Board. We hold that the Board properly certified the result of the representation election conducted at the Sumter plant, at which a majority of the eligible employ-

2

ees voted in favor of the Union; we therefore grant the Board's cross-application for enforcement.

I.

Yuasa commenced its Sumter operations in June 1991, after its Japanese parent purchased Exide Corporation's industrial battery division. The Union's efforts to organize the approximately 400 production and maintenance employees at the Sumter plant culminated in a representation election, conducted by secret ballot on February 23, 1995. The initial vote tally was 197-183 for the Union, not counting seventeen challenged ballots: two by Yuasa, six by the Union, and nine by the Board Agent. Following the hotly contested election, the parties availed themselves of the Board's appellate process; throughout April 1995, a hearing officer took evidence and considered arguments regarding the ballot challenges and additional objections lodged by Yuasa concerning the Union's activities during the campaign.

Yuasa and the Union withdrew their respective challenges to the Board Agent's acceptance of two ambiguously marked ballots, bringing the count to 198-184, with fifteen votes contested. The hearing officer's report, issued on May 23, 1995, recommended that all but two of the fifteen challenges be overruled, and that those thirteen ballots be opened and counted. The hearing officer also recommended that the entirety of Yuasa's remaining objections to the election's validity be rejected.

On appeal by Yuasa, a three-member panel of the Board adopted the hearing officer's recommendations as to both "sustained" challenges. Inasmuch as the thirteen remaining ballots were insufficient in number to affect the outcome of the election, the Board decided that they should remain sealed and effectively disregarded.[1] The Board concurred in the hearing officer's conclusion that Yuasa's complaints of campaigning improprieties were not of sufficient merit

_____

[1] Though irrelevant to the outcome of the proceedings, the Board adopted, pro forma, the hearing officer's recommendations regarding seven of the thirteen "overruled" challenges to which Yuasa had noted no exception.

3

to require a new election. Hence, on December 4, 1995, the Board certified the Union as the bargaining representative of the employees at the Sumter plant.

Four days following its certification by the Board, the Union sent a letter to Yuasa, demanding that it bargain. The company refused, and the Union promptly filed an unfair labor practice charge with the Board. In response to the Board's formal complaint, Yuasa reiterated its belief that the election was invalid, and, as a result, that it was not required to bargain. The matter proceeded before a second panel of the Board, which, on April 5, 1996, issued a decision and order granting summary judgment to the Board's counsel and directing Yuasa to bargain with the Union. Yuasa now petitions us for review of the Board's order; the Board cross-applies for enforcement.

II.

The results of a Board-certified representation election are presumptively valid. NLRB v. VSA, Inc., 24 F.3d 588, 591 (4th Cir. 1994). To overcome the presumption of validity, the challenging party must adduce specific evidence that unlawful acts occurred, and it must demonstrate that those acts "sufficiently inhibited the free choice of employees as to affect materially the results of the election." Id. at 591-92; NLRB v. Hydrotherm, Inc., 824 F.2d 332, 334 (4th Cir. 1987) (citation omitted). We review a certification order to ensure only that the Board has not abused its discretion. VSA, 24 F.3d at 592. If the Board's decision is reasonable and, in the context of the entire record, is supported by substantial evidence, then it must be enforced. Hydrotherm, 824 F.2d at 334.

A.

All thirteen of the challenges overruled by the hearing officer involved ballots cast by "lead hands," employees positioned above ordinary line workers but subordinate to those designated as supervisors. Yuasa contended that nine of the thirteen lead hands were de facto supervisors, ineligible to vote. See 29 U.S.C.A. §§ 159(e) (representation elections conducted by secret ballot of the "employees" in

4

a bargaining unit) <u>and</u> 152(3) ("The term `employee' . . . shall not include . . . any individual employed as a supervisor[.]") (West 1973).**2**

The ballots cast by the other four lead hands were challenged by the Union. It was later revealed that the challenges were not engendered by any serious contention that the employees were supervisors, but were instead motivated by the Union's asserted belief that all of the lead hands should be classified the same. At oral argument, Yuasa primarily focused on the Union's actions regarding these four ballots; it maintained that the challenges were not made for sufficient cause, as required by the Board's regulations. <u>See</u> 29 C.F.R. § 102.69(a) (1996) ("Any party and Board agents may challenge, <u>for good cause</u>, the eligibility of any person to participate in the election.") (emphasis supplied).

We need not decide whether the reason proffered by the Union in support of its challenges constitutes good cause, for it is plain that Yuasa cannot show that the challenges materially affected the results of the election. In gamely attempting to carry its burden, Yuasa contends that the challenge process -- where the contested ballots are marked with the employee's name and segregated from the others -- stigmatizes the voter. According to Yuasa, the procedure necessarily compromises the secrecy of the ballots; it therefore should not be undertaken lightly, because the risk of identification may have a "chilling effect" on the employees' willingness to participate in the election.

Yuasa's argument fails at the outset, because (1) the challenged ballots remain sealed, and therefore secret; and (2) 395 of approximately 398 eligible employees actually voted in the election, conclusively demonstrating the absence of any "chilling effect" attributable to the Union's challenges (or indeed, to any other source). Even had the challenged ballots been opened and counted, it is doubtful that Yuasa could show that the incremental compromise of secrecy repre-

_____

**2** The ballots cast by eight of these nine lead hands were initially challenged by the Board Agent on the ground that the employees' names did not appear on the "<u>Excelsior</u> list" submitted by Yuasa, designating those that the company considered eligible to vote. <u>See Excelsior Underwear</u>, 156 NLRB 1236 (1966).

sented by the four Union challenges -- over and above the nine indisputably legitimate ones -- tipped the scales in favor of a conclusion that the results of the election did not represent the will of the employees.[3]

B.

Notwithstanding that the ballots cast by the lead hands were not so numerous as to have altered the result of the voting, Yuasa maintains that the pro-Union activities of two of those lead hands, Sidney Roberson and John Geter, whom it asserts were actually supervisors, were sufficiently coercive to justify the election's annulment. See Turner's Express, Inc. v. NLRB, 456 F.2d 289, 291 (4th Cir. 1972) (pressure and coercion exerted by supervisors may deny employees a free and fair opportunity to decide whether they will be represented by a collective bargaining agent, though the untoward influence is not shown to have affected the election results).

In NLRB v. Manufacturer's Packaging Co., Inc., 645 F.2d 223, 225-26 (4th Cir. 1981), we explained that Turner's Express did not announce "a per se rule invalidating a union election if there is any evidence of pro-union supervisory activity." Rather, each case must

_____

[3] Yuasa asserts that our decision in Electronic Components Corp. v. NLRB, 546 F.2d 1088 (4th Cir. 1976), stands for the proposition that a violation of the Board's rules or regulations requires that an election be set aside, even absent proof that the results were materially affected. We do not believe that Electronic Components can be read so broadly. In that case, the employer objected to the certification of the representation election on several grounds, and it submitted a letter to the Board summarizing the evidence in support of its objections. The Regional Director, without conducting the investigation required by 29 C.F.R. § 102.69(c), recommended that the objections be overruled; the Board adopted the Regional Director's recommendations.

We remanded, directing that the Regional Director properly investigate the matter. We did not, however, set aside the election. Such a remedy would have been premature, inasmuch as there had not been any showing that the employer's allegations were true, let alone that the results of the election had been thereby materially affected. In sum, Electronic Components lends no support to Yuasa's position.

be examined in light of the facts and circumstances peculiar to it in order to determine "whether the supervisors' pro-union activities prevented employees from freely effectuating their collective choice." Id. at 226 (citation omitted).

The Board adopted the hearing officer's finding that Roberson and Geter were not supervisors. We need not address the correctness of that finding, however, because it is evident that the pair's activities on behalf of the Union do not begin to approach the egregiousness of those resulting in the invalidation of the election in Turner's Express. In that case, two shop foremen were largely responsible for bringing in a union organizer, and they intimidated and threatened employees they perceived as not supporting the organization efforts.

The activities of Roberson and Geter pale by comparison. The hearing officer found that Roberson attended organizational meetings and a Union-sponsored barbecue, was present on one occasion when Union literature was being distributed at the plant gate, and that he wore a pin and otherwise openly acknowledged his support for the Union. The evidence revealed that the extent of Roberson's personal contacts with his co-workers concerning the Union was limited to fulfilling one employee's request for a Union authorization card, inviting a second employee to a Union meeting and a third to the barbecue, and asking a fourth employee -- prior to the onset of the campaign -- whether he intended to join the Union. Geter did even less: he merely attended the barbecue, and, during the course of the campaign, divulged his support of the Union to approximately ten other employees in his department.

The activities of Roberson and Geter are far more comparable to those adjudged inconsequential in Manufacturer's Packaging. In that case, supervisors distributed a small number of union cards, wore union buttons, attended union meetings, and made pro-union statements. We hold now, as we did then, that, absent a showing that such activities "contain[ed] the seeds of potential reprisal, punishment, or intimidation," id. at 226 (citations omitted), it cannot be concluded that the employees' free choice was in any way impaired.

III.

Yuasa complains of various incidents occurring during the campaign that it attributes to the Union, including the mailing and distri-

7

bution of allegedly inflammatory campaign literature and a nasty coffee-break confrontation between employees of divergent viewpoints. These matters were fully developed before the hearing officer, who determined that Yuasa's contentions lacked substantial merit; the Board adopted the hearing officer's conclusions. We have carefully reviewed the record and the arguments of the parties, and we agree that none of Yuasa's objections to the campaign tactics employed by the Union and/or others call into question the validity of the election results.

IV.

Yuasa's petition for review is denied, and the Board's cross-application for enforcement of its decision and order of April 5, 1996, is granted.

**PETITION FOR REVIEW DENIED
AND ENFORCEMENT GRANTED**