**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

H. P. HOOD, INCORPORATED,
                    *Petitioner,*

            v.

NATIONAL LABOR RELATIONS BOARD,
                    *Respondent,*

            and

UNITED FOOD & COMMERCIAL
WORKERS, AFL-CIO, LOCAL 371,
                    *Intervenor.*

STATE OF CONNECTICUT,
                    *Amicus Curiae.*

No. 01-1653

NATIONAL LABOR RELATIONS BOARD,
                    *Petitioner,*

            and

UNITED FOOD & COMMERCIAL
WORKERS, AFL-CIO, LOCAL 371,
                    *Intervenor,*

            v.

H. P. HOOD, INCORPORATED,
                    *Respondent.*

STATE OF CONNECTICUT,
                    *Amicus Curiae.*

No. 01-1835

On Petition for Review and Cross-Application
for Enforcement of an Order
of the National Labor Relations Board.
(34-CA-9599)

Argued: January 23, 2002

Decided: March 1, 2002

Before LUTTIG, MICHAEL, and KING, Circuit Judges.

---

Petition for review denied and cross-application for enforcement granted by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Geoffrey Paul Wermuth, MURPHY, HESSE, TOOMEY & LEHANE, Boston, Massachusetts, for Hood. James Matthew Oleske, Jr., NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Board. Warren Hugh Pyle, PYLE, ROME, LICHTEN & EHRENBERG, P.C., Boston, Massachusetts, for Union. **ON BRIEF:** Arthur P. Murphy, MURPHY, HESSE, TOOMEY & LEHANE, Boston, Massachusetts, for Hood. Arthur F. Rosenfeld, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Robert J. Englehart, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Board. Richard Blumenthal, Attorney General of Connecticut, Richard T. Sponzo, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Hartford, Connecticut, for Amicus Curiae.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

H.P. Hood, Inc. petitions for our review, pursuant to 29 U.S.C. § 160(f), of the Decision and Order of the National Labor Relations Board, filed May 3, 2001 (the "Order"), requiring Hood to bargain with Local 371 of the United Food and Commercial Workers Union, AFL-CIO (the "Union"). The Board has filed a cross-application seeking enforcement of the Order.

In a razor-thin election conducted in August 2000, the production and maintenance employees of Hood's Suffield, Connecticut, dairy processing facility selected the Union as their collective bargaining representative. The Union prevailed by the margin of a single vote, seventy-one to seventy, with one contested ballot. Thereafter, the Board rejected Hood's objections to the election and certified the Union. Hood refused to bargain, however, claiming that the Union's certification was invalid. Following a complaint from the Union, the Board concluded that Hood's refusal to bargain constituted an unfair labor practice, in violation of §§ 8(a)(1) and (5) of the National Labor Relations Act (the "Act"), and it entered its Order of May 3, 2001, requiring Hood to bargain. As explained below, the Board did not abuse its discretion in certifying the Union, and we grant enforcement of its Order.

I.

On June 19, 2000, the Union petitioned the Board for a representation election among a unit of production and maintenance employees at Hood's Suffield, Connecticut, facility. Ten days later, Hood and the Union, with the approval of the Board's Regional Director, entered into a Stipulated Election Agreement (the "Stipulation"). The Stipulation provided, inter alia, that a representation election would be held on August 3, 2000, and that the appropriate collective-bargaining unit would include "[a]ll full-time and regular part-time production and maintenance employees." The Stipulation also provided that "seasonal employees" would be excluded from the collective bargaining unit and hence would be ineligible to vote. The Stipulation required Hood to provide the Regional Director with an election eligibility list con-

taining the full names and addresses of all eligible voters, and Hood complied with this requirement.

The election was conducted pursuant to the Stipulation, and a tally conducted on August 3, 2000, revealed that seventy-one votes were cast in favor of the Union and seventy votes were cast against it. One additional ballot was challenged by the Board agent supervising the election. The challenged ballot was not counted because the voter — Danielle Bourdeau — was not on the eligibility list provided by Hood to the Regional Director. As the Board and the parties recognized, if Bourdeau's ballot were counted, and if she voted against the Union, the election would be tied. The result would then be a victory for Hood, rather than a one-vote Union victory.[1]

Because of the significance of Bourdeau's ballot, the Regional Director requested that Hood and the Union advise him of their positions on Bourdeau's eligibility to vote. By letter dated August 10, 2000, the Union took the position that Bourdeau was a seasonal temporary employee and that, pursuant to the Stipulation, she was ineligible to vote. Five days later, Hood concurred with the Union's position that Bourdeau was ineligible to vote, also maintaining that she was a seasonal employee. In support of its position that Bourdeau was ineligible, Hood provided the Regional Director with a payroll record that listed Bourdeau's Work Status as "Seasonal Full Time." Three days later, however, by letter of August 18, 2000, Hood "reserve[d] the right to take an alternative position regarding the eligibility of Danielle Bourdeau."

Independent of the issue of Bourdeau's eligibility, Hood timely filed three separate objections to the election. By facsimile and letter dated August 10, 2000, Hood maintained as follows: (1) the Union had impermissibly offered to waive its initiation fee for certain employees if they signed union authorization cards prior to the election; (2) the Union had distributed and approved the use of tape

---

[1]As the Seventh Circuit recently observed, "like a base runner who reaches the bag at the same time as the ball, a[n electoral] tie goes to the company." *NLRB v. Americold Logistics, Inc.*, 214 F.3d 935, 937 (7th Cir. 2000). *See also NLRB v. A.G. Parrott Co.*, 630 F.2d 212, 213 (4th Cir. 1980).

recorders to coerce employees; and (3) two of the eligible Hood employees, a married couple, were unable to vote due to the death of a relative. On August 11, 2000, the Regional Director acknowledged receipt of Hood's objections, and it specifically advised Hood to furnish any evidence in support of its objections no later than seven days after the August 10, 2000, filing thereof, i.e., by August 17, 2000.

By facsimile dated August 18, 2000, Hood submitted its evidence to the Regional Director in support of its objections to the election. Specifically, Hood produced affidavits from five of its employees, each of whom averred that a Union representative had said "[i]f you sign a union authorization card before the election you won't have to pay an initiation fee."[2] In submitting its evidence, counsel for Hood stated in its facsimile letter that "[d]ue to a miscommunication between counsel for the employer, the Employer's evidence is being submitted hours late." Hood explained that "[c]ounsel for the employer had been on vacation this week," and it requested that the Board extend the time for submission of the evidence.[3]

On the following Monday, August 21, 2000, the Regional Director denied Hood's "belated request to extend the time for receipt of its evidence," concluding that Hood had not offered a sufficient explana-

---

[2]Hood did not submit any affidavits to the Regional Director in support of its allegation that the Union had distributed and approved the use of tape recorders to coerce employees; it simply maintained that an employee would be willing to so testify. Finally, Hood withdrew its third objection, i.e., that two employees were unable to vote because of the death of a relative.

[3]At no time, either before the Board or this Court, has counsel for Hood maintained that its submission of evidence on August 18, 2000, was timely. The Board's regulations require that objections to an election be filed within seven days after the tally of ballots has been prepared. 29 C.F.R. § 102.69(a). The tally was completed on August 3, 2000, and Hood timely filed its objections on the seventh day thereafter, August 10, 2000. The regulations further require that evidence in support of such objections be filed within seven days of the filing of objections, and that Saturdays and Sundays are to be included in computing the time. *Id.* As such, given that Hood's objections were filed on August 10, 2000, its supporting evidence was due on August 17, 2000, and its August 18, 2000, submission was untimely.

tion for its untimeliness. Following denial of its request for an extension of time, Hood faxed a request to the Board's Executive Secretary for special permission to appeal the Regional Director's decision refusing to consider its evidence. On August 30, 2000, the Board granted Hood's request for permission to appeal, and it also simultaneously denied the appeal on its merits.

Later that same day, August 30, 2000, the Regional Director issued his Report on Challenged Ballot and Objections (the "Regional Director's Report"), in which he assessed Ms. Bourdeau's eligibility to vote as well as Hood's objections to the election. Based on his independent investigation, as well as on the positions of both the Union and Hood that Bourdeau was a seasonal employee, the Regional Director concluded that Bourdeau was ineligible to vote and that her ballot had been properly excluded. The Regional Director also rejected Hood's other objections to the validity of the election, i.e., that the Union had offered to waive its initiation fee for certain employees, and that it had used tape recorders to coerce employees. Both of these objections were rejected because Hood's evidence was not timely filed. Finding no meritorious objection to the election, the Regional Director recommended that the Board issue a Certificate of Representation on behalf of the Union.

The morning after the Regional Director recommended certification of the Union, Hood made a 180-degree change in its position on Bourdeau's eligibility to vote. In a letter to the Regional Director dated August 31, 2000, Hood maintained that Bourdeau was "a regular part-time production and maintenance employee." In support of its new position, Hood submitted affidavits from two of its production supervisors, claiming that Bourdeau had been hired to work full-time through the Summer and regularly on a part-time basis thereafter.[4] On

---

[4]Hood maintains that its evidence of Bourdeau's part-time employment status was submitted after issuance of the Regional Director's Report because Hood's counsel was misled by an assistant to the Regional Director. Specifically, Hood contends that, in a phone conversation on August 30, 2000, an assistant to the Regional Director incorrectly stated that the Regional Director's Report would not issue that day. Hood contends that its reliance on the misstatement of the Regional Director's assistant explains why its evidence was not submitted until August 31, 2000, as opposed to on August 30, 2000. Hood, however, offers no reason why it did not submit evidence of Bourdeau's employment status prior to August 30, 2000.

September 1, 2000, Hood procured a hand-written affidavit from Bourdeau herself, stating that after she returned to school full-time in the Fall she "would be working several Saturdays every 3 months, but the schedule was not set."

On October 11, 2000, the Regional Director dealt with Hood's new position and issued a Supplemental Report on Challenged Ballot and Objections. Despite the tardy submission of affidavits with regard to Bourdeau's eligibility to vote, the Regional Director "considered *all* of the Employer's additional evidence." However, because the affidavits were not sufficiently specific and Bourdeau's work schedule had not yet been determined, the Regional Director decided that Bourdeau was not a regular part-time employee and hence sustained the Union's challenge to her ballot. The Regional Director consequently reiterated his earlier recommendation to the Board that Hood's objections to the election should be overruled. On November 21, 2000, the Board adopted the findings and recommendations of the Regional Director and certified the Union as the "exclusive collective-bargaining representative" of the production and maintenance employees at Hood's Suffield, Connecticut, dairy processing facility. *H.P. Hood, Inc.*, Decision and Certification of Representative, 34-RC-1829 (Nov. 21, 2000).

Following the Board's November 2000 certification, the Union unsuccessfully requested that Hood engage in collective bargaining. Hood, however, refused to bargain and, on March 1, 2001, the Union filed an unfair labor practice charge with the Board, alleging that Hood's refusal to bargain violated §§ 8(a)(1) and (5) of the Act.[5]

---

[5]Section 8 of the Act sets forth the definitions of the unfair labor practices at issue in this case, providing in pertinent part as follows:

It shall be an unfair labor practice for an employer —

(1) to interfere with, restrain, or coerce employees in the exercise of the rights [to engage in union activities] . . .;

. . .

(5) to refuse to bargain collectively with the representatives of his employees . . . .

29 U.S.C. § 158.

Hood then admitted its refusal to bargain with the Union, but contended that it was not obligated to do so because the Union's certification was invalid. On May 3, 2001, the Board issued the Order giving rise to this proceeding, concluding that all representation issues raised by Hood could have been or were litigated in the prior representation proceeding, and deciding that Hood had not adduced any newly discovered evidence or special circumstances that necessitated reexamination of the representation proceeding. *H.P. Hood, Inc.*, 333 N.L.R.B. No. 158 (May 3, 2001). As such, the Board ruled that Hood's refusal to bargain with the Union constituted a violation of §§ 8(a)(1) and (5) of the Act, and it ordered Hood to bargain with the Union on request.

On May 14, 2001, Hood filed its Petition for Review with this Court, requesting that the Order be set aside or that the case be remanded to the Board for an evidentiary hearing on the contested issues. Shortly thereafter, the Union moved to intervene in this proceeding in order to oppose Hood's effort to vacate the Board's certification, and the Board filed its cross-application for enforcement of the Order. We possess jurisdiction pursuant to the provisions of 29 U.S.C. § 160(f),[6] and we grant enforcement of the Order.

II.

As we have repeatedly observed, "[t]he results of a Board-supervised representation election are presumptively valid." *NLRB v. Flambeau Airmold Corp.*, 178 F.3d 705, 707 (4th Cir. 1999). We review a determination by the Board on the eligibility of a voter in

---

[6]Section 160(f) of Title 29 provides in pertinent part as follows:

> Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any court of appeals of the United States in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business . . . .

All relevant events underlying this proceeding occurred outside of our bailiwick, in the State of Connecticut. We nevertheless possess jurisdiction because Hood maintains a production and distribution facility in Winchester, Virginia.

a representation election for abuse of discretion. *Airport Shuttle-Cincinnati, Inc. v. NLRB*, 703 F.2d 220, 223 (6th Cir. 1983). In other words, "we may overturn the NLRB's finding only if the NLRB has abused its discretion in certifying the election." *Elizabethtown Gas Co. v. NLRB*, 212 F.3d 257, 262 (4th Cir. 2000) (internal quotations and citations omitted). In a similar vein, the Board's decision to deny an evidentiary hearing on election objections is also reviewed for abuse of discretion. *NLRB v. VSA, Inc.*, 24 F.3d 588, 596-98 (4th Cir. 1994). Finally, and in consideration of the deference which we accord the Board, its construction of its own regulations should be set aside only if it acted in a fashion "so arbitrary as to defeat justice." *KBI Sec. Serv., Inc. v. NLRB*, 91 F.3d 291, 295 (2d. Cir. 1996). Because Hood admits that it refused to bargain with the Union, the sole issue before us is whether the Board abused its discretion in certifying the Union.

### III.

Hood makes four contentions of error with regard to the Board's decision to certify the Union as the collective bargaining representative of the production and maintenance employees at its Suffield, Connecticut, plant. Specifically, Hood maintains that the Board abused its discretion in: (1) determining that Bourdeau was not eligible to vote in the election; (2) failing to conduct a hearing to investigate Bourdeau's eligibility to vote; (3) declining to consider Hood's late-filed evidence; and (4) refusing to remand the case in light of the Regional Director's alleged bias against Hood. We address each of these contentions in turn.

### A.

Hood maintains that the Board abused its discretion in concluding that Bourdeau was not a regular part-time employee eligible to vote in the election. Pursuant to the Stipulation, Hood provided the Regional Director with the election eligibility list containing the names of all eligible voters: Bourdeau's name was not on the list. Following the election, the Regional Director afforded both parties an opportunity to state their positions on Bourdeau's eligibility to vote, and both the Union and Hood promptly maintained that Bourdeau was ineligible. Indeed, Hood provided the Regional Director with a payroll record indicating that Bourdeau was a seasonal employee and

thus ineligible to vote. Hood did not alter its position that Bourdeau was ineligible until four weeks after the election.

Hood's only evidence that Bourdeau was a regular part-time employee eligible to vote — submitted the day after issuance of the Regional Director's Report — consisted of three conclusory affidavits. The first two affidavits were made by Hood production supervisors and, as the Regional Director observed, both contained "the identical general statement that in the summer of 2000 she was told that she would work 'on a part time basis regularly after the summer.'" Moreover, as the Regional Director also explained, "neither [affidavit] provided any specific evidence as to the terms and conditions of her employment, the anticipated duration of her employment, or the days or number of hours she would be working during any payroll period." Hood's third affidavit was from Bourdeau herself and it was equally vague, asserting that after Bourdeau returned to school in the Fall she would be "working several Saturdays every 3 months but the schedule was not set." Simply put, these three affidavits did not compel the Board to conclude that Bourdeau would be working as a regular part-time employee at Hood's Suffield plant.

Indeed, giving Hood the benefit of any doubt on Bourdeau's statement that she would work "several Saturdays every 3 months," the Board's decision would not constitute an abuse of its discretion. Although "the Board generally excludes summer employees from the appropriate unit, such employees will be deemed eligible if, upon returning to school, their employment evidences regular part-time status." *Crest Wine & Spirits, Ltd.*, 168 N.L.R.B. 754, 754 (1967). To be included in a bargaining unit, however, such students must share a "sufficient community of interest" with the unit's other employees. *Sandvik Rock Tools, Inc. v. NLRB*, 194 F.3d 531, 535 (4th Cir. 1999). An employee, such as Bourdeau, who merely works "several Saturdays every three months," plainly would not share such a community of interest.

As the First Circuit has recognized, "[w]hile consistent employment but one day a week may be enough to satisfy the Board's 'community of interest' standard . . . less than consistent Saturday employment . . . cannot sustain a finding of regular part-time employment without other evidence." *NLRB v. Sandy's Stores, Inc.*, 398 F.2d

268, 273 (1st Cir. 1968); *see also Wehrenberg Theatres, Inc.*, 260 N.L.R.B. 18, 22 (1982), *enforced* 690 F.2d 159 (8th Cir. 1982) (finding student who worked only "several" times during fall and Christmas vacation after summer employment to be ineligible to vote in representation election); *Century Moving & Storage, Inc.*, 251 N.L.R.B. 671, 681 (1980) ("The determinative criteria as to whether students are to be included in a unit appears to be the regularity of their part-time employment [which may be as little as one day a week.]"). The First Circuit's decision in *Sandy's Stores*, as well as the Board's own decisions, indicate that an employee should generally work at least a day each week to be a regular part-time employee.[7] Bourdeau's averment that she will work "several Saturdays every 3 months," by contrast, indicates that she will likely work, at most, only one or two Saturdays per month, i.e., far less than one day per week.

Because Bourdeau would be working sporadically, and significantly less than one day per week, the Board did not err in concluding that she did not share a sufficient community of interest with the production and maintenance unit's employees. Given that Bourdeau was not on the election eligibility list furnished by Hood, and that Hood's own payroll records listed her as a seasonal employee, it is clear that the Board did not abuse its discretion in concluding that she was not a regular part-time employee, and hence that she was not eligible to vote.

## B.

Hood next contends that the Board erred in failing to conduct a hearing to investigate Bourdeau's eligibility to vote. The Board, how-

---

[7]Hood maintains that the dispute over Bourdeau's employment status is controlled by the Board's 1978 decision in *Dick Kelchner Excavating Co.*, 236 N.L.R.B. 1414 (1978). There the Board determined that a student who worked full-time during the summer, holidays, and occasional Saturdays was a regular part-time employee who should be included in the bargaining unit. The Board's decision in *Dick Kelchner* is easily distinguishable, however, because in that case the employer's business was seasonal in nature, with its peak time being from May to November. Thus, the student, like other employees, worked full-time during the peak season and less regularly during the off season.

ever, was under no obligation to conduct such a hearing, and it did not, in these circumstances, abuse its broad discretion in declining to do so.

As we have recognized, "[a] hearing is necessary if it is shown that there are substantial and material issues of disputed fact relating to the validity of the election." *NLRB v. Hydrotherm, Inc.*, 824 F.2d 332, 335 (4th Cir. 1987). An evidentiary hearing is not required when, "if all the facts supporting the position of the objecting party were credited, no ground is shown for setting aside the election." *NLRB v. Mfr's Packaging Co.*, 645 F.2d 223, 226 n.1 (4th Cir. 1981). Moreover, in seeking an evidentiary hearing, "it is not sufficient for an employer merely to question the interpretation of or legal conclusions drawn from the facts by the Regional Director." *National Posters, Inc. v. NLRB*, 720 F.2d 1358, 1362 (4th Cir. 1983). Rather, "[t]o be entitled to a hearing, the objecting party must make a proffer of evidence which prima facie would warrant setting aside the election." *Hydrotherm*, 824 F.2d at 335 (internal quotations and citations omitted).

Hood has failed to point to any substantial and material issues of disputed fact regarding Bourdeau's eligibility to vote. Indeed, in its brief, Hood asserts that "the evidence [of Bourdeau's employment status] was uncontested." Appellant's Br. at 27. If the evidence is uncontested, there can be no substantial and material issue of disputed fact. *See Hydrotherm*, 824 F.2d 335-36 ("In fact, the company has acknowledged that '[i]n this case, the evidence is uncontroverted, so there is no unresolved issue of fact.' Thus, the Board did not abuse its discretion in refusing to grant the company a hearing.").

Rather than point to a substantial and material issue of disputed fact, Hood contends that "[t]he Board and Regional Director failed to draw the only reasonable conclusion, namely that Ms. Bourdeau had a legitimate expectation of continued employment." Appellant's Br. at 27-28. In essence, Hood maintains that the Board reached the wrong conclusion in its interpretation of the evidence. As this Court recognized in *National Posters*, however, an employer is not entitled to a hearing merely because it questions the Board's interpretation of the facts. 720 F.2d at 1362.

In seeking a hearing on the issue of Bourdeau's eligibility to vote, the burden was on Hood to point to substantial and material issues of

disputed fact and to make a "proffer of evidence which prima facie would warrant setting aside the election." *Hydrotherm*, 824 F.2d at 335 (internal quotations and citations omitted). Because no such proffer was made, the Board did not abuse its discretion in declining to conduct a hearing on Bourdeau's eligibility to vote.

C.

Hood also maintains that the Board erred in refusing to consider its late-filed evidence, i.e., the five affidavits of its employees averring that union officials told them "[i]f you sign a union authorization card before the election you won't have to pay an initiation fee."[8] Pursuant to Rule 102.69(a) of the Board's Rules and Regulations, a party filing objections to a representation election must furnish its evidence to the Regional Director within seven days "after the filing of objections."[9] As we have noted, Hood filed its objections on August 10, 2000, and, as such, it was required to furnish its evidence to the Regional Director no later than August 17, 2000. Hood readily acknowledges that its evidence was submitted "hours late," on the morning of August 18, 2000.

The Board has explained that Rule 102.69(a) will be "strictly applied," *Star Video Entm't*, 290 N.L.R.B. 1010, 1010 (1988), and it has frequently rejected late-filed evidence submitted by both employers and unions. For example, in *TA Inv. Co., Inc.*, 300 N.L.R.B. 473 (1990), the Board refused to consider a union's late-filed evidence in

---

[8]The Supreme Court has made clear that a union may not offer to waive its initiation fee in exchange for an employee signing a union authorization card prior to the election. *NLRB v. Savair Mfg. Co.*, 414 U.S. 270 (1973). Indeed, as this Court observed in *Hydrotherm*, "[a] waiver of initiation fees conditioned upon the signing of a union authorization card prior to an election is improper and must result in the setting aside of a union victory." 824 F.2d at 336. Thus, if credited, Hood's evidence would be grounds for setting aside the election.

[9]Rule 102.69(a) provides, in relevant part, as follows: "Within 7 days after the filing of objections, or such additional time as the Regional Director may allow, the party filing objections shall furnish to the Regional Director the evidence available to it to support the objections." 29 C.F.R. § 102.69(a).

support of objections, in spite of the fact that the union's attorney was hindered by a family emergency. Just like Hood, the union in *TA Investment* did not request an extension to file its evidence until the day after the evidence was due. In rejecting the union's belated request for an extension, the Board explained that Rule 102.69(a) "does not require consideration of a request for an extension of time when the request itself is untimely." *Id.* at 473 n.1. The Board also strictly applied the provisions of Rule 102.69(a) in its decision in *Public Storage*, 295 N.L.R.B. 1034 (1989), where it reversed the Regional Director's consideration of a union's late-filed evidence. The Board determined that the union's failure to receive the Regional Director's courtesy letter reminding it of the submission deadline did not excuse non-compliance with Rule 102.69(a). More recently, in *Goody's Family Clothing, Inc.*, 308 N.L.R.B. 181 (1992), the Board refused to consider an employer's evidence in support of its objections to a representation election because the evidence was filed a day late. *Cf. Drum Lithographers*, 287 N.L.R.B. 22 (1987) (refusing to consider union's late-filed objections to representation election).

As we have observed, the Board's construction of its own regulations may only be set aside by us if it acted in a fashion "so arbitrary as to defeat justice." *KBI Sec. Serv., Inc. v. NLRB*, 91 F.3d 291, 295 (2d. Cir. 1996). Because the Board has consistently followed its admonition in *Star Video* that the provisions of Rule 102.69(a) will be strictly applied, we are unable to conclude that it acted arbitrarily in refusing to consider Hood's late-filed evidence. In this situation, the Regional Director sent Hood a certified letter, on August 11, 2000, reminding it that evidence was due no later than seven days after the August 10, 2000, filing of its objections. Hood nevertheless submitted its evidence a day late, on August 18, 2000, offering the explanation that there had been "a miscommunication between counsel for the employer" and that "[c]ounsel for the employer has been on vacation this week and through inadvertence did not request the extension until today." Given the Board's decision in *TA Investment* that an attorney's family emergency does not excuse failure to comply with Rule 102.69(a), we see no reason why an attorney being on vacation should constitute an exception to the Board's uniform application of its Rule.

## D.

Finally, Hood has maintained that a hearing was warranted on its objections to the election because the record revealed that both the Board and the Regional Director were biased against it. In support of its bias allegation, Hood pointed to certain "harshly critical" statements of the Regional Director. For example, according to Hood's brief, the Regional Director stated that Hood's counsel "'erroneously and disingenuously' made misrepresentations to the Region, [and] 'once again' failed to 'provide a valid basis for excusing its neglect.'" Appellant's Br. at 41. We see Hood's contention of bias as meritless. While the terminology utilized by the Regional Director may be considered as strong, it is premised on Hood's conduct during the proceedings before the Regional Director and the Board. The Regional Director's language is not dissimilar to that frequently found in judicial and administrative opinions, and its statements fail to support the assertion that the Board and the Regional Director were somehow biased against Hood. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) (recognizing in recusal context that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," and that remarks that are "critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.").

## IV.

For the foregoing reasons, we conclude that the Board did not abuse its discretion in certifying the election. We accordingly deny Hood's petition for review, and we grant the Board's cross-application for enforcement of its Order.

*PETITION FOR REVIEW DENIED AND CROSS-APPLICATION FOR ENFORCEMENT GRANTED*